# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 1197, ROBERT YACKEL, ANTHONY PEPE AND JAMES WALSH,<br><br>                    Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF EDISON, ANTONIA RICIGLIANO IN HER OFFICIAL AND INDIVIDUAL CAPACITIES, DENNIS GONZALEZ IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, RICHARD LAIRD IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES AND WILLIAM STEPHENS IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, JOHN DOES 1-10, AND XYZ CORP. 1-10,<br><br>                    Defendants. | Hon. William J. Martini, U.S.D.J.<br><br>Civil Action No. 12-cv-00260-WJM-MF<br><br><br>ORAL ARGUMENT REQUESTED<br><br><br>MOTION RETURNABLE:  May 7, 2012 |

---

## BRIEF IN SUPPORT OF MOTION TO DISMISS

---

**DECOTIIS, FITZPATRICK & COLE, LLP**
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, New Jersey 07666
Tel.: (201) 928-1100
*Attorneys for Defendants Township of Edison,*
*Antonia Ricigliano, and William Stephens*

OF COUNSEL
Louis N. Rainone, Esq.

ON THE BRIEF
Victoria A. Flynn, Esq.
Daniel E. Zwillenberg, Esq.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES...................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

PROCEDURAL HISTORY ......................................................................................... 2

STATEMENT OF FACTS ........................................................................................... 3

ARGUMENT ............................................................................................................. 10

POINT ONE ............................................................................................................... 10

    STATE COURT AND ADMINISTRATIVE PROCEEDINGS PRECLUDE PLAINTIFFS
    FROM PURSUING THIS FEDERAL LAWSUIT AGAINST THE TOWNSHIP
    DEFENDANTS ..................................................................................................... 10

      A.   Res Judicata/Entire Controversy Doctrine.................................................... 10

      B.   Issue Preclusion ........................................................................................... 13

      C.   Rooker-Feldman Doctrine............................................................................ 15

      D.   Summary ....................................................................................................... 17

POINT TWO ............................................................................................................... 18

    THIS COURT SHOULD ABSTAIN AS THE CLAIMS IN THIS MATTER INVOLVE
    MATTERS PENDING BEFORE PERC AS WELL AS MATTERS THAT HAVE BEEN
    DECIDED TO COMPLETION ............................................................................ 18

POINT THREE ........................................................................................................... 21

    THE COMPLAINT IN THIS MATTER SHOULD BE DISMISSED FOR FAILURE TO
    STATE A CLAIM.................................................................................................. 21

      A.   Section 1983 Claim ...................................................................................... 21

      B.   Section 1985 Claim ...................................................................................... 23

      C.   Section 1988 Claim ...................................................................................... 24

      D.   CEPA CLAIM .............................................................................................. 24

i

E.   Remaining Claims Barred .................................................................... 25

F.   Hostile Work Environment . .................................................................. 26

CONCLUSION................................................................................................ 28

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399 (3d Cir. 2005) .............................. 18

Baines v. Masiello, 288 F. Supp. 2d 376 (W.D.N.Y. 2003) .......................................................... 24

Baldassare v. State of N.J., 250 F.3d 188 (3d Cir. 2001) ............................................................. 22

Balthazar v. Atlantic City Med. Center, 279 F.Supp. 2d 574 (D.N.J. 2003),
    aff'd 137 Fed. Appx. 482 (3d Cir. 2005) ................................................................................ 17

Bolden v. State Police, 578 F.2d 912 (3d Cir.1978) ..................................................................... 16

Boyle v. Quest Diagnostics, Inc., 441 F. Supp. 2d 665 (D.N.J. 2006) ........................................ 26

Caver v. City of Trenton, 420 F.3d 243 (3d Cir. 2005) ................................................................ 25

Clayton v. City of Atl. City, 722 F. Supp. 2d 581 (D.N.J. 2010) ................................................. 25

Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567 (3d Cir. 2002) ................ 14

Dowdell v. Univ. of Med. & Dentistry of New Jersey, 94 F. Supp. 2d 527 (D.N.J. 2000) ........... 11

E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489 (3d Cir. 1990) .......................................................... 16

Ernst v. Child and Youth Services. of Chester County, 108 F.3d 486 (3d Cir.),
    cert. denied 522 U.S. 850 (1997) ......................................................................................... 15

Farber v. City of Paterson, 440 F.3d 131 (3d Cir. 2006) .............................................................. 24

Fields v. Thompson Printing Co., 363 F.3d 259 (3d Cir. 2004) ................................................... 12

FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834 (3d Cir. 1996) ................... 16

Garcetti v. Ceballos, 547 U.S. 410 (2006) ................................................................................. 23

Gorum v. Sessoms, 561 F.3d 179 (3d Cir. 2009) ....................................................................... 22

Gregory v. Chehi, 843 F.2d 111 (3d Cir. 1988) ........................................................................... 10

Guarino v. Larsen, 11 F.3d 1151 (3d Cir. 1993) .................................................................. 15, 17

*Gulf Offshore Co. v. Mobil Oil Corp.*, 453 U.S. 473 (1981) ........................................ 19

*Gulla v. North Strabane Township*, 146 F.3d 168 (3d Cir. 1998) ................................ 15

*Hamilton v. Dist. of Columbia*, 720 F. Supp. 2d 102 (D.D.C. 2010) ........................... 24

*In re Cont'l Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002) .............................................. 10

*ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205 n. 19 (3d Cir. 2004) ........................... 15

*Ivy Club v. Edwards*, 943 F.2d 270 (3d Cir. 1991) ..................................................... 20

*Kamilewicz v. Bank of Boston Corp.*, 92 F.3d 506 (7th Cir. 1996),
    cert. den. 520 U.S. 1204 (1997) .......................................................................... 16

*Kelly v. Borough of Sayreville*, 927 F. Supp. 797 (D.N.J. 1996) ................................ 13

*Kelly v. Borough of Sayreville, N.J.*, 107 F.3d 1073 (3d Cir. 1997) ........................... 13

*Kessler Institute for Rehabilitation, Inc. v. Mayor and Council of Essex Fells*,
    876 F.Supp. 641, (D.N.J. 1995) ........................................................................... 20

*Local 194, Int'l Fed'n of Prof'l & Technical Engineers, AFL-CIO v. The New Jersey Tpk. Auth.*,
    CIV.A. 11-CV-1653 (JLL), 2011 WL 1547473, *4 (D.N.J. Apr. 21, 2011) ............... 19

*Local 54 Patrolman's Benev. Ass'n v. Fontoura*, CIV.A. 06-CV-6278 (SDW),
    2007 WL 4165158, *4 (D.N.J. 2007) ............................................................. 19, 20

*Lui v. Comm'n on Adult Entertainment Establishments of the State of Delaware*,
    369 F.3d 319 (3d Cir. 2004) ................................................................................ 20

*Marran v. Marran*, 376 F.3d 143 (3d Cir. 2004) ......................................................... 15

*Matthews v. New Jersey Inst. of Tech.*, 717 F. Supp. 2d 447 (D.N.J. 2010) .......... 26, 27

*Mawhinney v. Bennett*, CIV.A 08-CV-3317 (NLH)(JS), 2010 WL 147945
    (D.N.J. Jan. 11, 2010) ......................................................................................... 11

*Middlesex County Ethics Committee v. Garden State Bar Ass'n*, 457 U.S. 423 (1982) .............. 19

*National Railroad Passenger Corp. v. Pennsylvania Public Utility Comm'n*,
    342 F.3d 242, (3d Cir. 2003) ............................................................................... 15

*O'Neill v. City of Philadelphia*, 32 F.3d 785 (3d Cir. 1994) .................................... 19, 20

*Panza v. Armco Steel Corp.*, 316 F.2d 69 (3d Cir.1963) ............................................ 16

Peacock v. Albertsons Acme Markets, 607 F. Supp. 2d 694 (D.N.J. 2009)...................................27

Peterson v. City of Long Branch, N.J., CIV.A. 08-CV-3452 (FLW),
    2009 WL 749589, *8 (D.N.J. Mar. 19, 2009) .................................................14

Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir.2008).....................................21

Policastro v. Tenafly Bd. of Educ., 710 F. Supp. 2d 495 (D.N.J. 2010) .................................22, 23

Port Auth. PBA v. Port Auth. of NY & NJ, 973 F.2d 169 (3d Cir. 1992) ......................................16

Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996) ................................................18

Rycoline Products, Inc. v. C & W Unlimited, 109 F.3d 883 (3d Cir. 1997) ...............................11

Swierkiewicz v. Sorema N. A., 534 U.S. 506 n. 1 (2002) .............................................21

Todaro v. Twp. of Union, 27 F. Supp. 2d 517 (D.N.J. 1998) ....................................13, 14

Valenti v. Mitchell, 962 F.2d 288 (3d Cir. 1992) ..........................................17

Whiteford v. Reed, 155 F.3d 671 (3d Cir. 1998).................................................15

Williams v. County of Nassau, 684 F. Supp. 2d 268 (E.D.N.Y. 2010) ...........................................24

Younger v. Harris, 401 U.S. 37 (1971) ....................................................18

Zahl v. Harper, 282 F.3d 204 (3d Cir. 2002) ..........................................20

**State Cases**

Cogdell v. Hospital Center, 116 N.J. 7 (1989).....................................................11, 12

Estate of Roach v. TRW, Inc., 164 N.J. 598 (2000) ..........................................25

House v. Carter-Wallace, Inc., 232 N.J. Super. 42 (App. Div. 1989)...........................................25

Hunterdon Cent. High Sch. Bd. of Ed. v. Hunterdon Cent. High Sch. Teachers' Ass'n,
    174 N.J. Super. 468 (App. Div. 1980) aff'd, 86 N.J. 43 (1981) ................................................19

Klein v. Univ. of Med. & Dentistry of New Jersey, 377 N.J. Super. 28 (App. Div. 2005)...........24

McNally v. Providence Washington Ins. Co., 304 N.J. Super. 83 (App. Div. 1997) .....................11

McNeil v. Legislative Apportionment Comm'n of State, 177 N.J. 364, 395 (2003)............... 10, 13

Mehlman v. Mobil Oil Corp., 153 N.J. 163 (1998) ........................................................ 25

Mystic Isle Dev. Corp. v. Perskie & Nehmad, 142 N.J. 310 (1995)...................................11, 12

Spinks v. Twp. of Clinton, 402 N.J. Super. 465 (App. Div. 2008)................................. 23

Young v. Schering Corp., 275 N.J. Super. 221 (App. Div. 1994) aff'd, 141 N.J. 16 (1995)......... 25

## Federal Statutes

42 U.S.C. § 1985................................................................................................ 23, 24

42 U.S.C. § 1988................................................................................................ 24

P.L. 2010 ........................................................................................................ 4

## State Statutes

N.J.S.A. 10:5-1.................................................................................................. 27

N.J.S.A. 10:5-4.................................................................................................. 27

N.J.S.A. 34:13A-1............................................................................................... 3, 4

N.J.S.A. 34:19-3a............................................................................................... 24

N.J.S.A. 40:69A-1............................................................................................... 3

N.J.S.A. 40:69A-37.1............................................................................................ 8, 9, 10

N.J.S.A. 40A:10-21.............................................................................................. passim

## Federal Rules

Fed.R.Civ.P. 12(b)(6) ......................................................................................... 3

## State Rules

Federal Practice and Procedure §1216.......................................................................... 21

## **PRELIMINARY STATEMENT**

Plaintiffs International Association of Firefighters Local 1197, Robert Yackel, Anthony Pepe and James Walsh filed this lawsuit, claiming to have been retaliated against by the Township of Edison, in violation of their constitutional rights, federal law, state law and contract law, as a consequence of employment decisions implemented by the Township that have impacted members of the paid firefighters union.  The factual basis of plaintiffs' claims in this matter, however, involves matters that were the subject of prior decisions issued by the Superior Court of New Jersey and the state Public Employment Relations Commission ("PERC"), as well as matters presenting pending before PERC.  Thus, this Court lacks jurisdiction over this matter.

In this case, plaintiffs challenge those employment decisions implemented by the Township to address the financial condition of the Township's budget, as well as those decisions to more efficiently manage the municipal government.  Some of those decisions have resulted in staff reductions, reassignments of personnel and consolidation of job functions.  Other decisions simply involve the reorganization of resources to operate more effectively.  It is patently obvious that this case is nothing more than an attempt by plaintiffs to constitutionalize their employment disputes with the Township (which should be subject to arbitration under the parties' contract) because they have been so unsuccessful in challenging them pursuant to the venues available to them under state law and their contract.

Plaintiff Local 1197, the union that represents the Township's paid firefighters, has refused to acknowledge the Township's managerial authority to implement those employment policies, and instead has engaged in a crusade to challenge the Township at every turn.  Thus, all of the employment disputes raised in this federal action have been the subject of prior state legal proceedings, which should preclude from seeking separate relief from this District Court.

1

For instance, in October 2010, plaintiffs Local 1197, Yackel and Walsh filed suit against the Township to challenge the change in the policy pertaining to the staffing of firehouses. The state court matter remained pending through June 2011, at which time the Superior Court of New Jersey dismissed that state court proceeding. See Local 1197, et al. v. Township of Edison, et al., Docket No. MID-L-8076-10. Most, if not all of the issues identified in the federal complaint herein could have been asserted in that state court proceeding, but were not. Further, there were a number of matters pending before PERC (some of which still remain pending) in which plaintiffs could have raised their federal claims, but they did not. Thus, principles of claim and issue preclusion, as well as New Jersey's Entire Controversy Doctrine, preclude plaintiffs from seeking relief regarding those controversies that could have been pursued by plaintiffs in those earlier proceedings. Further, plaintiffs are precluded from challenging those employment decisions that have already been found to constitute a valid exercise of the Township's managerial prerogative in this federal lawsuit.

Having failed to state an actionable claim, the only conclusion that can be drawn from this action is that this lawsuit is intended to annoy and harass the Township. Indeed, plaintiffs (through their legal counsel) should be aware that the Rooker-Feldman and Younger abstention doctrine precludes the District Court from presiding over this matter, in addition to the entire controversy doctrine. Thus, this Court should dismiss the Complaint and issue sanctions against plaintiffs for having to response to this frivolous lawsuit. Fed. R. Civ. P. 11.

## PROCEDURAL HISTORY

On January 13, 2012, plaintiffs filed a ten-count complaint against defendants Township of Edison, Mayor Antonia Ricigliano (in her official and individual capacity), Dennis Gonzalez (in his official and individual capacity), Richard Laird (in her official and individual capacity) and William Stephens (in his official and individual capacity). Defendants Township of Edison, Ricigliano and Stephens waived service of the Complaint, and were granted a clerk extension, which requires defendants to file a response to the Complaint by April 11, 2012. Defendants hereby seek summary dismissal of the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6).

## STATEMENT OF FACTS

I.      PARTIES: The Township of Edison ("Edison" or the "Township"), is a municipal corporation organized under the mayor-council form of government pursuant to New Jersey's Optional Municipal Charter Act (also known as the "Faulkner Act"), N.J.S.A. 40:69A-1 et seq. The Township is a public employer as defined by the New Jersey Public Employer-Employee Relations Act, N.J.S.A. 34:13A-1, et seq. ("NJPEERA"). Mayor Antonia Ricigliano is the Mayor of the Township of Edison, having commenced her four-year term in January 2010. Defendant Dennis Gonzalez is the former Business Administrator for the Township of Edison. Defendant Richard Laird is a former employee of the Township of Edison, who worked within the Department of Administration. And, defendant William Stephens is employed by the Township as a special assistant to Mayor Ricigliano. Certification of Maureen Ruane ("Ruane Cert."), ¶ 113, Exh. KK.

The International Association of Fire Fighters Local No. 1197 ("Local 1197") is a public employee representative within the meaning of state law, and is the majority representative for certain nonsupervisory firefighters in the Township's Division of Fire. Plaintiff Robert Yackel,

Anthony Pepe, and James Walsh are firefighters represented by Local 1197.  The Township and Local 1197 are parties to a collective bargaining agreement, with a term of January 1, 2010 through December 31, 2013.  This agreement was reached only after the parties participated in compulsory interest arbitration.

II.      PLAINTIFFS' EMPLOYMENT DISPUTES:      For a number of years, the Township of Edison has been struggling with addressing a structural deficit within its budget. Ruane Cert., Exh. W.    Upon assuming office in January 2010, Mayor Ricigliano has implemented a number of cost-saving measures to address this fiscal crisis within the Township's budget.  The Mayor has reorganized Township Departments, which has, in certain circumstances, required reductions of staff, layoffs, and even reduction of ranks.  Id.

In this lawsuit, plaintiffs take exception to those decisions that have impacted the Division of Fire.  Plaintiffs refuse to acknowledge that those employment decisions were related to the Township's valid efforts to address the economic condition of the Township, and instead allege that those decisions were motivated by the intent to retaliate against the members of Local 1197 for having not supported the mayoral candidacy of William Stephens in 2005.  Defendants seek dismissal of this lawsuit because, in large part, this lawsuit amounts to nothing more than an attempt to litigate employment disputes that are the subject of pending state administrative proceedings, or previously-decided matters.

A. MATTERS DECIDED TO COMPLETION

1.   1.5% Healthcare Contribution (Compl., ¶75):   Plaintiffs allege the Township retaliated against them by requiring employees to contribute to their health care premiums, in accordance with State law.  P.L. 2010, c. 2 (amending N.J.S.A. 40A:10-21 to require all public employees to contribute, at minimum, 1.5% of salary towards health care premiums.  Local 1197

filed a grievance with PERC to preclude the Township from making deductions.   Ruane Cert., ¶16, Exh. D.  In response, the Township filed a Petition with PERC to find that the health care contribution required by state statute was a non-negotiable matter.  Id. at ¶17, Exh. E.

On November 23, 2010, PERC issued a written decision declining to restrain Local 1197's arbitration.  Ruane Cert., ¶18, Exh. F.  The Township filed an appeal with the Appellate Division, as well as a motion to with PERC to stay its decision as this law applies to all public employees.  Id. at ¶19, Exh. G.  On February 3, 2011, PERC granted the Township's motion for a stay, specifically finding that it had erred by not finding the Township had acted in accordance with the State law when making health care deductions.  Id. at ¶20, Exh. H. In its brief to the Appellate Division, PERC acknowledged that "its first ruling was wrong," and urged the Appellate Division to find in favor of the Township. Id. at ¶22, Exh. I.

Despite the clarity of this issue, the Union refused to withdraw its grievance until after briefing with the Appellate Division was complete, thus requiring the Township to expend public dollars to defend itself in this legal proceeding.  Id. at ¶23.  On August 2, 2011, Local 1197 and the Township filed a stipulation of dismissal with prejudice regarding the healthcare contribution issue that was pending before the Appellate Division, thereby extinguishing Local 1197's right to raise this as an issue herein.  Id. at Exh. K.

2.  Reduction of Manning Levels (Compl., ¶43): In this lawsuit, plaintiffs resurrect an issue decided to completion in state court, in the Township's favor.  On October 29, 2010, plaintiffs Local 1197, Robert Yackel, James Walsh, as well as firefighter Raymond Tibok filed suit against the Township to challenge the decision to reduce the manning levels for the Division of Fire from 22 to 20 firefighters on duty, per shift.   Ruane Cert., ¶27.  In that case, Local 1197, et al. v. Township of Edison, et al., Docket No. MID-L-8076-10, the Law Division of the

Superior Court of New Jersey (Hon. James P. Hurley, J.S.C.) found the Township's reduction of staffing requirements for the firefighters to be a valid exercise of management prerogative, and dismissed the complaint by Order dated June 23, 2011. Id. at ¶¶31-32. In its finding, the Court concluded there were "no novel constitutional issues" raised by the plaintiffs that warranted further review. Id., Exh. N at 61. Plaintiffs did not seek appellant review.

      3. <u>Voluntary Dismissal of Prior Federal Lawsuit</u>: On May 12, 2011, Plaintiffs filed a complaint in the District of New Jersey containing allegations almost identical to those in the present lawsuit, except for those contained herein regarding the Barclays tournament and the alleged failure to discipline an EMT. Id. at ¶110, Exh. II. See Id. at ¶¶79-92. Prior to allowing the Township taking action to dismiss that frivolous pleading, plaintiffs voluntarily dismissed their complaint, Docket No. 2:11-cv-02734. Id. at ¶112.

      B. <u>PENDING MATTERS</u>

      1.    <u>Fire Inspectors</u> (Compl., ¶ 70): On August 19, 2010, the Township issued a public advertisement for a civilian "fire prevention specialist." Id. at ¶43. Local 1197 filed an unfair labor practice charge and application for interim relief with PERC on September 22, 2010, challenging the Township's decision to hire civilians to provide fire inspection services rather than continuing with the practice of having paid firefighters perform this service. Ruane Cert. at ¶44. PERC denied Local 1197's application for interim relief on November 29, 2010. Id. at ¶47, Exh. Q. On September 29, 2011, PERC's Director of Unfair Practices dismissed Local 1197's unfair labor practice charge. Id. at ¶48, Exh. R. The Director held that the Township had validly exercised its management prerogative in its decision to transfer fire inspection duties from firefighters to civilian inspectors. Id. Local 1197 appealed this decision to the PERC Commission, which remains pending before PERC. Id. at ¶50.

6

2.  <u>EMTs & Verification of Sick Time</u> (Compl., ¶¶52, 77):  On or about January 15, 2011, Edison began assigning all emergency medical response work to the Township's civilian EMTs – both professional and volunteer, rather than using its paid firefighter force.  Thus, firefighters formerly assigned to the Firefighter/EMT rotation were reassigned to non-EMT assignments, effective January 25, 2011. Ruane Cert. ¶¶63-64.   The elimination of the Firefighter/EMT rotation resulted in the elimination of a salary differential, which had previously been paid to firefighters serving on that rotation.  <u>Id</u>. at ¶65.

On February 3, 2011, Local 1197 filed an unfair labor practice charge against the Township to challenge this decision, as well as the Township's decision to institute a policy to verify sick leave of firefighters.   <u>Id</u>. at ¶66, Exh. U.  In its brief filed with PERC, Local 1197 alleged that the Township's actions constituted illegal retaliation for protected conduct and speech.  Ruane Cert. ¶67, Exh. V at 10-11.  On December 31, 2011, PERC's Director of Unfair Practices issued a decision, finding the claims of retaliation and anti-union animus meritless.  <u>Id</u>. at ¶71-72, Exh. W.  The Director held found the Township's decisions to constitute management's prerogative not subject to negotiation, and therefore dismissed the unfair labor practice charge. <u>Id</u>. Local 1197 filed an appeal to the full PERC Commission, which is pending.  <u>Id</u>. at ¶73.

On March 17, 2011, Local 1197 also filed a request for submission of a panel of arbitrators to hear its grievance regarding the elimination of the salary differential which had previously been paid to firefighters working as EMTs. <u>Id</u>. at ¶74.   In response, on February 1, 2012, the Township filed a scope petition and an application for interim relief seeking to restrain arbitration.   <u>Id</u>. at ¶75.   In the scope petition, the Township seeks a determination that the civilianization of EMT services is not subject to negotiation.  <u>Id</u>. at ¶76.  The Scope Petition also seeks a determination that elimination of the shift differential is not subject to negotiation.  <u>Id</u>.

On February 16, 2012, PERC's designee found the Township has a likelihood of success on this issue because the Township may utilize its management prerogative to have EMS services provided by civilians full-time on a per-diem basis. Id. at ¶77, Exh. Z. Local 1197's grievance and the Township's scope petition remain pending before PERC.

       3.  The Barclays (Compl. ¶ 83):  Plaintiffs allege that the Township compensated off-duty police officers at a more preferential rate than off-duty firefighters for purposes of coverage of the Barclays golf tournament held in August, 2011.  This issue however is the subject of a grievance filed by Local 1197 with PERC on December 12, 2011.  Id. at ¶90.  The rate used by the Township is consistent with the long-standing negotiated rate for those services.  Id. at ¶89.  Thus, this grievance is meritless.  However, the matter has been referred to an arbitrator for a hearing, currently scheduled for September 7, 2012.  Id. at ¶92.

       4.  Executive Orders (Comp. ¶ 66):  Plaintiffs cite to the executive orders issued by Mayor Ricigliano to remind all Township employees that they should not be discussing Township business directly with members of the Township Council, in accordance with N.J.S.A. 40:69A-37.1. Ruane Cert. at ¶55, Exh. S.    Mayor Ricigliano later amended her order to advise the Municipal Clerk, the Deputy Clerk and all Directors (department heads) that, despite the restrictions contained at N.J.S.A. 40:69A-37.1, they were permitted to discuss Township business directly with members of the Council. Id. at ¶57, Exh. T.    The executive order and amended executive order applied to all employees – not just firefighters.  Id. at ¶58.

       5.  Alleged Discipline Discrepancy:  On March 19, 2011, a firefighter was involved in a motor vehicle accident while operating a Township vehicle and received a verbal reprimand as a discipline. Ruane Cert., Exh. BB. This firefighter filed a grievance regarding this discipline decision on April 8, 2011.  Id. In an effort to suggest unfair treatment of firefighters with regard

to discipline decision making, at paragraph 82 of the Complaint, plaintiffs allege that another Township employee who was involved in a motor vehicle accident was not disciplined. The allegations of unfair treatment are false, as the other Township employee was in fact subject to discipline. Id. at ¶80-82.

**ARGUMENT**

**POINT ONE**

**STATE COURT AND ADMINISTRATIVE PROCEEDINGS PRECLUDE PLAINTIFFS FROM PURSUING THIS FEDERAL LAWSUIT AGAINST THE TOWNSHIP DEFENDANTS.**

As noted *supra*, Local 1197 and the Township have been involved in a number of lawsuits and proceedings before PERC regarding employment disputes involving the firefighter union in the Township of Edison. Indeed, most of the factual allegations in this complaint involve issues that are the subject of a state court decision, a PERC decision, or reference grievances that are pending with PERC. Thus, despite having been aware of their federal claims identified in their complaint, plaintiffs failed to pursue them in the context of those legal proceedings at the state level. Since plaintiffs had ample opportunity to pursue their legal claims in those earlier proceedings, plaintiffs are now barred from pursing them with this District Court. Thus, the Complaint should be dismissed.

A.    **Res Judicata/Entire Controversy Doctrine:**   The doctrine of *res judicata* provides that prior judgments shall foreclose successive litigation of similar matters, whether or not re-litigation of those claims raise issues from an earlier suit. See Gregory v. Chehi, 843 F.2d 111, 116 (3d Cir. 1988) (noting *res judicata* encompasses both merger and bar principles in giving dispositive effect in a later action to a prior judgment). Thus, a party must bring all possible claims against a party in a single proceeding, or be barred from doing so in a separate proceeding. McNeil v. Legislative Apportionment Comm'n of State, 177 N.J. 364, 395 (2003)("Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined."); In re Cont'l Airlines, Inc., 279 F.3d 226, 232 (3d Cir. 2002).

10

Similarly, New Jersey's entire controversy doctrine bars Plaintiffs from pursing this action. <u>See</u> <u>Rycoline Products, Inc. v. C & W Unlimited</u>, 109 F.3d 883, 887 (3d Cir. 1997) (federal court shall apply state entire controversy doctrine under the Full Faith and Credit Act, 28 U.S.C. § 1738); <u>Dowdell v. Univ. of Med. & Dentistry of New Jersey</u>, 94 <u>F. Supp.</u> 2d 527, 533-534 (D.N.J. 2000) (dismissing federal suit on entire controversy grounds). Rule 4:30A of the New Jersey Court Rules provides that "[n]onjoinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of omitted claims." N.J.Ct.R. 4:30A ("assure[s] that all aspects of a legal dispute occur in a single lawsuit.") Thus, New Jersey's entire controversy doctrine requires joinder of all claims and parties within a single proceeding, at the risk of preclusion. <u>Rycoline Prods., Inc.</u>, 109 F.3d at 886 (describing entire controversy doctrine as "New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles."); <u>see also</u> <u>Cogdell v. Hospital Center</u>, 116 N.J. 7 (1989)(entire controversy shall be applied to "virtually all causes, claims and defenses relating to a controversy between the parties engaging in litigation").

The entire controversy doctrine provides for a final, comprehensive adjudication of a legal controversy, in the interest of fairness to all involved parties (including prospective parties) and preserves judicial resources by avoiding fragmented litigation. <u>Mystic Isle Dev. Corp. v. Perskie & Nehmad</u>, 142 N.J. 310, 322 (1995)(noting entire controversy doctrine bars claims that may arise during the pendency of a first action). If a new claim arises during the course of pending litigation between the parties, it is incumbent upon that party to amend the pleadings to identify the additional claim. <u>McNally v. Providence Washington Ins. Co.</u>, 304 N.J. Super. 83, 92 (App. Div. 1997); <u>see also</u> <u>Mawhinney v. Bennett</u>, CIV.A 08-CV-3317 (NLH)(JS), 2010 WL 147945 (D.N.J. Jan. 11, 2010). Thus, New Jersey's entire controversy doctrine bars a subsequent

lawsuit when there is some duplication of proofs involved, thereby "forcing the two claims to [have been] brought at the same time." Fields v. Thompson Printing Co., 363 F.3d 259, 266 (3d Cir. 2004)(quoting Mystic Isle).

This lawsuit primarily involves facts and circumstances that predate the state court decision issued in Local 1197, et al. v. Township of Edison. Ruane Cert., ¶35. Plaintiffs filed that lawsuit in October 2010 to challenge the Township's decision to reduce the level of manning for the Township's firehouses, which is a matter plaintiffs have incorporated in their claims against the Township in this federal lawsuit. Thus, by virtue of the previously issued state court's decision, plaintiffs are now barred from pursuing any claims that were raised in that lawsuit, or any other matter of that they were aware of while that lawsuit was pending, but failed to articulate in that lawsuit. See Mystic Isle, supra; Cogdell, supra; Rycoline Prods. inc., supra.

Indeed, three of the plaintiffs herein, Local 1197, Yackel, and Walsh, were named parties in the state court lawsuit.[1] Since that lawsuit was filed in October 2010 and remained pending until June 2011, plaintiffs were well aware of the following events that are now the subject of this federal court complaint:

- Dispute regarding health care contribution (at issue in May 2010);
- Dispute regarding deferred compensation plan (at issue by June 2010);
- Dispute regarding civilianizing fire inspector position (at issue in August 2010);
- Hiring of civilian EMTs (at issue in December 2010);
- Mayor's issuance of executive order (December 2010);
- Administration enforcement of sick leave policy (January and March 2011).

Thus, principles of *res judicata* and the entire controversy doctrine bar plaintiffs from re-

---

[1] Plaintiffs cannot argue that the entire controversy doctrine does not apply to the claims of Anthony Pepe, who was not party to the first lawsuit. The Third Circuit has long held that "judgments in actions involving a labor union or employee association are binding on members whose interests were adequately represented." E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489, 494 (3d Cir. 1990) citing Bolden v. State Police, 578 F.2d 912, 918–19 (3d Cir.1978) (employee association) and Panza v. Armco Steel Corp., 316 F.2d 69 (3d Cir.1963) (labor union). His claims are therefore barred to the same extent as his co-plaintiffs.

12

litigating those claims that were at issue in <u>Local 1197, et al. v. Township of Edison</u>, as well as any claims plaintiffs were aware of at the time of that lawsuit when it was pending.

Similarly, the decisions issued by PERC bar plaintiffs attempt to re-litigate those issues that were the subject of those PERC decisions, as well as those claims that could have been the subject of those PERC proceedings to resolve the employment disputes between plaintiffs and the Township.  <u>See</u> <u>Todaro v. Twp. of Union</u>, 27 F. Supp. 2d 517, 528 (D.N.J. 1998); <u>see</u> <u>also</u> <u>McNeil</u>, 177 N.J. at 395 ("Claim preclusion applies not only to matters actually determined in an earlier action, but to all relevant matters that could have been so determined.")  PERC has found in favor of the Township on the issue of retaliation prior to plaintiffs' filing of this federal lawsuit, thus, having already rejected the allegation in this case that the Township's employment decisions were implemented with retaliatory intent because the union and its members did not support William Stephens during his 2005 Mayoral campaign.  Ruane Cert., ¶69-72.  Plaintiffs are now precluded from resurrecting that issue in the context of this federal lawsuit, as well as any other claims they could have raised in the earlier PERC proceedings.  <u>See</u> <u>Kelly v. Borough of Sayreville</u>, 927 F. Supp. 797, 803 (D.N.J. 1996) <u>aff'd sub nom.</u> <u>Kelly v. Borough of Sayreville, N.J.</u>, 107 F.3d 1073 (3d Cir. 1997).

*Res judicata* principles and the entire controversy doctrine compelled plaintiffs to preserve their federal claims against the Township by raising all available claims in the available state legal proceedings below (both in the state court action and/or the various proceedings before PERC).  Having failed to do so, plaintiffs are precluded from raising those issues in a federal lawsuit.  Thus, the Complaint should be dismissed with prejudice.

**B.  Issue Preclusion.**

The doctrine of issue preclusion provides that a decision of a court of competent

jurisdiction on an issue of fact or law necessary to support its decision is conclusive and binding in subsequent suits involving the same parties or those in privity with them.  Delaware River Port Auth. v. Fraternal Order of Police, 290 F.3d 567, 572 (3d Cir. 2002).  A decision of a state agency, such as PERC, is entitled to the same preclusive effect as a state court judgment.  Todaro, 27 F. Supp. 2d at 528; Peterson v. City of Long Branch, N.J., CIV.A. 08-CV-3452 (FLW), 2009 WL 749589, *8 (D.N.J. Mar. 19, 2009) (acknowledging the preclusive effect of PERC's refusal to issue an unfair labor practice complaint).  Plaintiffs are therefore barred from pursuing any of those previously-decided disputes against the defendants.

To determine the preclusive effect of a prior legal determination of an issue, the New Jersey Courts apply the following analysis:

> the issue must be identical; (2) the issue must have actually been litigated in a prior proceeding; (3) the prior court must have issued a final judgment on the merits; (4) the determination of the issue must have been essential to the prior judgment; and (5) the party against whom collateral estoppel is asserted must have been a party or in privity with a party to the earlier proceeding.  Delaware River Port Auth., supra, 290 F.3d at 573.

As explained supra, Local 1197 filed an unfair labor practice charge with PERC last year alleging that the Township retaliated against the union for not supporting William Stephens in his candidacy for mayor in the general election of 2005.  That allegation is identical to the issue raised by Local 1197 in this case – whether the Township's conduct constituted retaliation in violation of Local 1197's freedom of speech rights.  That issue was decided to completion, by PERC, finding Local 1197's argument lacked merit as there was no evidence that the Township's policies vis-à-vis Local 1197 were retaliatory.  Thus, PERC found the Township's actions constituted a valid exercise of managerial prerogative.  Ruane Cert., ¶¶71-72, Exh. W.

Further, in the state court proceedings discussed herein, plaintiffs also claimed that the

14

Township's actions were unconstitutional. As already noted, the state court found in favor of the Township. Thus, the elements of issue preclusion are present in this matter, which precludes plaintiffs from seeking an alternate ruling on the issue of retaliation from this Court.

**C. Rooker-Feldman Doctrine.**

The Rooker-Feldman doctrine prohibits federal courts from sitting in review of final state court decisions. See Whiteford v. Reed, 155 F.3d 671, 673 (3d Cir. 1998); Gulla v. North Strabane Township, 146 F.3d 168, 170 (3d Cir. 1998). Thus, federal courts lack subject matter jurisdiction where the relief sought in a federal action would "effectively reverse the state decision or void its ruling." Whiteford, 155 F.3d at 674; see also Ernst v. Child and Youth Services. of Chester County, 108 F.3d 486, 491 (3d Cir.), cert. denied 522 U.S. 850 (1997) (doctrine prohibits federal courts, other than the United States Supreme Court, from hearing any cases which "is a functional equivalent of an appeal from a state court judgment").

The Third Circuit has noted that the Rooker-Feldman doctrine "is intended to promote respect of state court adjudications, even as to federal questions." Guarino v. Larsen, 11 F.3d 1151, 1157 (3d Cir. 1993) ("Just as federal district courts should presume that pending state court proceedings can correctly resolve federal questions, they should also presume that completed state court proceedings have correctly resolved these questions.") The doctrine ensures finality of state court proceedings, so litigants "do not take multiple bites from the same apple." Id.

Like *res judicata*, Rooker-Feldman preclusion applies not just to the parties to a previous litigation, but also their privies. See Marran v. Marran, 376 F.3d 143, 151 (3d Cir. 2004); ITT Corp. v. Intelnet Int'l Corp., 366 F.3d 205, 216 n. 19 (3d Cir. 2004); National Railroad Passenger Corp. v. Pennsylvania Public Utility Comm'n, 342 F.3d 242, 257 (3d Cir. 2003); Valenti, 962 F.2d at 297-98. Since plaintiffs in this action are in privity with Local 1197, those legal

15

arguments that bar Local 1197 from pursuing this lawsuit similarly bar the claims raised by all the co-plaintiffs. E.E.O.C. v. U.S. Steel Corp., 921 F.2d 489, 494 (3d Cir. 1990) citing Bolden v. State Police, 578 F.2d 912, 918–19 (3d Cir.1978) (employee association) and Panza v. Armco Steel Corp., 316 F.2d 69 (3d Cir.1963) (labor union).

Here, the Rooker-Feldman doctrine precludes this Court from hearing this case because, in effect, it would be sitting in review of decisions issued by a state court, as well as earlier PERC decisions. Port Auth. PBA v. Port Auth. of NY & NJ, 973 F.2d 169, 177 (3d Cir. 1992); see also FOCUS v. Allegheny County Court of Common Pleas, 75 F.3d 834, 840 (3d Cir. 1996) (federal claims are barred under Rooker-Feldman when, "in order to grant the federal plaintiff the relief sought, the federal court must determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual"); Kamilewicz v. Bank of Boston Corp., 92 F.3d 506, 511 (7th Cir. 1996), cert. den. 520 U.S. 1204 (1997) (Rooker-Feldman applies even if the state court judgment might be erroneous or unconstitutional). Specifically, the District Court would need to evaluate whether the Superior Court was correct in the dismissal of the lawsuit challenging the manning requirements, as well as claims of retaliation.

Also, this Court would have to reconsider the many findings of PERC below if it does not dismiss this action; specifically, the decisions whereby PERC upheld the Township's decision to hire civilian fire inspectors (Ruane Cert., Exh. R); concluding that the Township acted in accordance with State law by requiring firefighters to contribute to the health care costs (Ruane Cert., Ex.H); holding decision to transfer EMS services to civilian EMTs was appropriate (Ruane Cert., Exh. W); upholding Township's implementation of sick leave verification policy (Id.)

Plaintiffs cannot avoid the application of the Rooker-Feldman doctrine by reframing their grievances against the Township as constitutional or civil rights matters. See Valenti v. Mitchell,

962 F.2d 288, 296 (3d Cir. 1992) (plaintiff may not "be allowed to escape Rooker-Feldman by raising a new constitutional theory in federal court" where there was a full and fair opportunity to litigate such a claim in state court); see also Guarino, 11 F.3d at 1157; Balthazar v. Atlantic City Med. Center, 279 F.Supp.2d 574, 586-87 (D.N.J. 2003), aff'd 137 Fed. Appx. 482 (3d Cir. 2005) (plaintiff dissatisfied with state court decision cannot simply recast those claims as federal claims to avoid application of the Rooker-Feldman doctrine). Plaintiffs could have raised their federal/constitutional claims in the legal proceedings below, as noted *supra,* and in some circumstances did, but unsuccessfully. Ruane Cert., ¶72. For this Court to now review the matters identified in the complaint, would place this District Court in the position of reviewing those prior decisions, which the Rooker-Feldman doctrine does not permit. Since this Court lacks subject matter jurisdiction under the Rooker-Feldman doctrine, it should dismiss this lawsuit.

### D. Summary.

Given the relatedness of the claims asserted in this lawsuit by plaintiffs to those claims raised by plaintiffs in earlier-filed state court and administrative proceedings, it is clear that the only purpose of this lawsuit is to harass, annoy and/or embarrass the Township defendants. Indeed, some of these employment disputes have been decided to completion. And, plaintiffs filed almost an identical federal lawsuit, which it voluntarily dismissed. It is extremely unfair to force the Township to continue to expend public dollars defending against meritless claims raised by plaintiffs in multiple forums. Thus, the Court should dismiss this action for the reasons articulated herein, as well as issue sanctions for plaintiffs' vexatious conduct in their filing of this case. Fed. R. Civ. P. 11.

## POINT TWO

## THIS COURT SHOULD ABSTAIN AS THE CLAIMS IN THIS MATTER INVOLVE MATTERS PENDING BEFORE PERC AS WELL AS MATTERS THAT HAVE BEEN DECIDED TO COMPLETION.

A federal district court has discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding. Younger v. Harris, 401 U.S. 37, 44-45 (1971) (doctrine of abstention is based upon respect for state sovereignty, and confidence in the ability of state courts to heed constitutional imperatives); see also Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 723 (1996) ("Federal courts abstain out of deference to the paramount interests of another sovereign, and the concern is with principles of comity and federalism."); Addiction Specialists, Inc. v. Twp. of Hampton, 411 F.3d 399, 408 (3d Cir. 2005)(federal court lacks jurisdiction over federal claim "where resolution of that claim in federal court would offend principles of comity by interfering with an ongoing state proceeding.")  Thus, abstention is appropriate where (1) there are ongoing state proceedings, judicial in nature; (2) the state proceedings implicate important state interests; and, (3) the state court proceedings afford an adequate opportunity for plaintiffs to raise their federal claims. Id. (citations omitted).

In their Rule 11.2 Certification, plaintiffs acknowledge that this lawsuit would interfere with a number of ongoing PERC proceedings – the Barclays dispute; the civilian fire inspectors dispute; and, the dispute regarding the Township's policy to verify use of sick leave.  Plaintiffs failed to mention in their certification that the claims asserted in their lawsuit are also the subject of other pending matters including plaintiffs' unfair labor practice charge regarding the use of civilian EMTs, and the grievance regarding the firefighter/EMT rotation.  Since the factual

underpinnings of this lawsuit are inextricably intertwined with those pending PERC matters, the Court's evaluation of plaintiffs' claims would interfere with PERC's adjudication of those grievances; thus, abstention is appropriate.

It is undisputed that the aforementioned PERC proceedings are judicial in nature. Local 194, Int'l Fed'n of Prof'l & Technical Engineers, AFL-CIO v. The New Jersey Tpk. Auth., CIV.A. 11-CV-1653 (JLL), 2011 WL 1547473, *4 (D.N.J. Apr. 21, 2011). Therefore, the first prong of Younger abstention is met. O'Neill v. City of Philadelphia, 32 F.3d 785, 789 (3d Cir. 1994); See e.g. Local 194, 2011 WL 1547473, at *9 (dismissing federal claims filed by union while matter pending before PERC). Further, PERC proceedings have been found to implicate important state interests, satisfying the second prong of Younger abstention. See Local 194, supra, 2011 WL 1547473 at *4; Local 54 Patrolman's Benev. Ass'n v. Fontoura, CIV.A. 06-CV-6278 (SDW), 2007 WL 4165158, *4 (D.N.J. 2007).

It is also undisputed that plaintiffs had an adequate opportunity to raise their federal claims in the context of those PERC proceedings, as well as the earlier-filed state court lawsuit. See Gulf Offshore Co. v. Mobil Oil Corp., 453 U.S. 473, 477 (1981) (state courts have authority to decide federal claims); Middlesex County Ethics Committee v. Garden State Bar Ass'n, 457 U.S. 423, 431 (1982) ("Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights"; emphasis in original); Hunterdon Cent. High Sch. Bd. of Ed. v. Hunterdon Cent. High Sch. Teachers' Ass'n, 174 N.J. Super. 468, 475 (App. Div. 1980) aff'd, 86 N.J. 43 (1981) (PERC has authority to decide issues of constitutional law). Indeed, it has been recognized that, in the context of a state administrative proceeding like a PERC matter, constitutional issues can be properly addressed on appeal by the Appellate Division. See, e.g., Local 194, 2011 WL 1547473, at *8 citing Zahl v.

19

Harper, 282 F.3d 204, 210 (3d Cir. 2002) (holding third prong of the Younger test is met if an appellate court sitting in review of an agency decision can address federal claims).

Further, Younger abstention applies to those issues that have already been resolved by the state court or PERC, but which plaintiffs voluntarily terminated or failed to appeal.  O'Neill, 32 F.3d at 790-91 (finding that a party that fails to avail itself of all available appellate remedies cannot resurrect those claims in the context of a federal lawsuit and avoid abstention, because such claims are deemed "pending" for absention purposes); Local 54 Patrolman's Benev. Ass'n v. Fontoura, 2007 WL 4165158, at *4.  Thus, the health care contribution dispute, which was fully briefed to the Appellate Division but eventually withdrawn, as well as the dispute over the reduction in manning decided by the Superior Court of New Jersey, are considered "pending" for purposes of Younger abstention.  Id.

Thus, since all of the factual allegations underlying plaintiffs' claims in this matter require that the District Court abstain from hearing this matter, this case should be dismissed with prejudice.  Lui v. Comm'n on Adult Entertainment Establishments of the State of Delaware, 369 F.3d 319, 327 (3d Cir. 2004); Ivy Club v. Edwards, 943 F.2d 270, 280 (3d Cir. 1991); Kessler Institute for Rehabilitation, Inc. v. Mayor and Council of Essex Fells, 876 F.Supp. 641, 657 (D.N.J. 1995).

**POINT THREE**

**THE COMPLAINT IN THIS MATTER SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM.**

Fed. R. Civ. P. 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted. While all factual allegations in a complaint are presumed true, in a light most favorable to plaintiffs, for purposes of a motion to dismiss, "the pleading must contain something more ... than ... a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." 5 C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235–236 (3d ed.2004); see also Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir.2008) (internal quotations omitted); Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002). In addition to the fatal legal deficiencies noted *supra* regarding plaintiffs' claims in this matter, a review of the pleadings fails to state an actionable claim against defendants. Thus, the Complaint should be dismissed.

A.     Section 1983 Claim: In the first count of the complaint, plaintiffs allege their employment disputes with the Township violate their constitutional rights to free speech, freedom of association and voting rights. As to plaintiffs' claim that their freedom of association has been violated, there are no facts within the Complaint regarding plaintiffs' involvement in any particular political organizations that warrants constitutional protection. Furthermore, there are no allegations in the Complaint to suggest defendants interfered with plaintiffs' right to vote. Thus, those claims are facially deficient.

As to their freedom of speech claim, plaintiffs have not pled sufficient facts to demonstrate that it engaged in speech protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action. Gorum v. Sessoms, 561 F.3d

179, 184 (3d Cir. 2009); Baldassare v. State of N.J., 250 F.3d 188, 194-95 (3d Cir. 2001)(noting that whether speech is protected is an issue of law).

There is nothing in the Complaint to suggest that plaintiffs' engaged in speech protected by the First Amendment.  Indeed, plaintiffs are required to plead facts that demonstrate they engaged in speech as a citizen, on a matter of public concern, and the employer did not have "an adequate justification for treating the employee differently from any other member of the general public as a result of the statement he made." Gorum, 561 F.3d at 185 (internal quotes omitted).  Also, plaintiffs must establish that their interests in dissemination of their speech outweigh the employer's interests in restricting them. Policastro v. Tenafly Bd. of Educ., 710 F. Supp. 2d 495, 498 (D.N.J. 2010) aff'd, Policastro v. Tenafly Bd. Of Educ., 438 F. App'x 153 (3d Cir. 2011).

It is difficult to discern from the Complaint which statements they allege to be protected by the First Amendment.  It appears that plaintiffs' claim is based upon the argument that they have been retaliated against by defendant William Stephens for their prior political support of the former Township Mayor, Jun Choi, because defendant Stephens ran against Choi during that 2005 general election.  (Complaint, ¶ 20-25).  Plaintiffs' political support for Choi, standing alone, does not constitute protected speech.  Indeed, plaintiffs have not developed a plausible legal theory to sustain the assertions in the Complaint on this issue.

For instance, there are insufficient facts in their complaint to connect their speech (opposition to defendant Stephens during the 2005 general election) with the employment policies at issue in this case.  Merely because defendant Stephens is presently employed by the Township is insufficient to provide the necessary causal connection.  Further, plaintiffs' theory is flawed because it fails to take into account its most recent political support of defendant Mayor Ricigliano during then 2009 general election.  (Complaint, ¶ 26).  Plaintiffs' support of the

current mayor, who has made the decisions at issue in this case, negates their argument that they are being retaliated against for their support of a candidate in 2005. And, as noted *supra,* PERC has found allegations of retaliation based upon this theory lack merit.

Plaintiffs' remaining claims of retaliation involving speech involve statements made by plaintiffs *after* the Township implemented the employment decisions at issue in this matter (which they claim to be retaliatory). It is difficult to understand how complaints made after the implementation or announcement of the employment decisions constitute retaliatory conduct, because the alleged retaliatory conduct occurred *prior to* the speech for which they seek protection. Further, those employment policies have been found to constitute valid exercises of management prerogative by PERC. Thus, plaintiffs cannot state a claim under the First Amendment for after-the-fact statements that were critical of defendants' employment decisions, since they were found to be in accordance with their authority under the law.

The mere fact that plaintiffs are public employees does not transform their complaints into a valid constitutional issue, or suggest that their speech involves a matter of public concern. See, e.g. Garcetti v. Ceballos, 547 U.S. 410, 420 (2006)(noting that the First Amendment does not permit public employees to "constitutionalize" the grievance process). Plaintiffs' personal complaints and criticisms of the Township's employment decisions, standing along, cannot constitute a valid First Amendment claim. Spinks v. Twp. of Clinton, 402 N.J. Super. 465, 478 (App. Div. 2008). Thus, plaintiffs' §1983 claim should be dismissed.

B.   Section 1985 Claim: In Count II of the plaintiff, plaintiff alleges defendants engaged in a conspiracy against plaintiffs, in violation of 42 U.S.C. § 1985. There are no facts alleged in support of this claim, nor could there be. Indeed, under the intracorporate conspiracy doctrine, municipal officers cannot conspire with each other in violation of §1985, as a matter of

law.  Williams v. County of Nassau, 684 F. Supp. 2d 268, 291-92 (E.D.N.Y. 2010) on

reconsideration in part, 779 F. Supp. 2d 276 (E.D.N.Y. 2011); Hamilton v. Dist. of Columbia, 720

F. Supp. 2d 102, 109 (D.D.C. 2010); Baines v. Masiello, 288 F. Supp. 2d 376, 394-95 (W.D.N.Y.

2003).  Even if defendants could legally conspire, 42 U.S.C. § 1985 does not provide a remedy

for conspiracies motivated by political affiliation.  Farber v. City of Paterson, 440 F.3d 131, 143

(3d Cir. 2006).  Thus, Count II of the Complaint should be dismissed.

  C. Section 1988 Claim:  In Count III, plaintiffs allege a claim under 42 U.S.C. §

1988.  However, defendants cannot be found to have violated this statute, as it is only applicable

to provide attorney fees for violations of other provisions of the law, not at issue in this case.

  D. CEPA CLAIM:  In Count IV of the Complaint, plaintiffs allege defendants

violated the Conscientious Employee Protection Act ("CEPA") in its implementation of

employment policies regarding the firefighters.  However, plaintiffs cannot state an actionable

CEPA claim.  To do so, plaintiffs must allege as follows:

> (1) a reasonable belief that the employer's conduct was violating
> either a law, rule, regulation or public policy; (2) he or she
> performed a "whistle blowing" activity as described in N.J.S.A.
> 34:19-3a or c; (3) an adverse employment action was taken against
> him or her; and (4) a causal connection existed between his
> whistle-blowing activity and the adverse employment action. Klein
> v. Univ. of Med. & Dentistry of New Jersey, 377 N.J. Super. 28, 38
> (App. Div. 2005).

First, Plaintiffs have not, and cannot, allege facts to suggest that the Township acted in

violation of a law, rule, regulation or public policy in its decision-making process. Instead,

plaintiffs' reliance upon labor disputes in support of their CEPA claim, all of which were or are

the subject of a state court proceeding or a PERC matter, only highlights the frivolousness of this

case.  Id. (noting that CEPA was intended to protect an employee who "blows the whistle on

illegal or unethical activity committed by their employers or co-employers," Estate of Roach v.

TRW, Inc., 164 N.J. 598, 609-10 (2000), not to assuage egos or settle internal disputes at the workplace).   CEPA does not protect those employees who merely object or criticize an employment policy decision, especially those who have a process available to them to seek review.   House v. Carter-Wallace, Inc., 232 N.J. Super. 42, 48 (App. Div. 1989); Young v. Schering Corp., 275 N.J. Super. 221, 237 (App. Div. 1994) aff'd, 141 N.J. 16 (1995) (CEPA does not provide a remedy for an employee who merely disagreed with a lawful decision of the employer). The employment disputes referenced in the Complaint do not implicate any public harm; instead, they are all motivated by the private interests of plaintiffs. Mehlman v. Mobil Oil Corp., 153 N.J. 163, 188 (1998) (noting CEPA does not protect private interests of employee). Plaintiffs have not, and cannot, allege that the employment decisions taken by the Township implicate public safety.   Thus, plaintiffs have not pled any actionable "whistle-blowing" activity protected by CEPA.

Nor have plaintiffs alleged facts to suggest that an adverse employment action has been taken against them by the Township.   Indeed, plaintiffs have not been disciplined, demoted, discharged or suffered any specific adverse employment action taken by the Township.   Instead, they have been required to comply with generally-applicable employment policies imposed upon them by the Township, most of which have already been determined by PERC or the state court to be valid exercises of managerial prerogative.   Thus, they have not stated an actionable CEPA claim.   Caver v. City of Trenton, 420 F.3d 243, 255 (3d Cir. 2005) (noting that to allege an adverse retaliatory employment action under CEPA, alleged retaliatory conduct must impact the compensation or rank of an employee, or be equivalent to employee discharge); Clayton v. City of Atl. City, 722 F. Supp. 2d 581, 589 (D.N.J. 2010).

E.   Remaining Claims Barred:   Plaintiffs' claim for relief under CEPA bars all of their

25

remaining claims. As noted by CEPA,

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract; except that the institution of an action in accordance with this act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under the common law. N.J.S.A. 34:19-8.

See also Young, 141 N.J. at 29 (institution of a CEPA claim waives any other claims, be common law or contractual, alleging retaliation); Boyle v. Quest Diagnostics, Inc., 441 F. Supp. 2d 665, 671 (D.N.J. 2006)(breach of contract and breach of covenant of good faith and fair dealing claims waived by CEPA claim); Matthews v. New Jersey Inst. of Tech., 717 F. Supp. 2d 447, 452 (D.N.J. 2010) (New Jersey Civil Rights Act claim barred by CEPA waiver provision).

Thus, plaintiffs have waived their right to pursue the other claims in their complaint, which are based upon contract law, state law or common law, by asserting a CEPA claim against defendants. See specifically Count V (Common Law - Whistleblower/Retaliation); Count VI (Breach of Contract); Count VII (Breach of Implied Contract); Count VIII (Good Faith/Fair Dealing); Count IX (Hostile Work Environment); Count X (New Jersey Civil Rights Act). Further, the contract claims and labor dispute claims asserted by plaintiffs are barred by the terms of the parties' collective bargaining agreement, which requires plaintiffs to utilize binding arbitration as the exclusive remedy for such claims. Ruane Cert., ¶10, Exh. C. Thus, plaintiffs cannot avoid those processes provided for by the parties' contract.

F.    Hostile Work Environment: In Count IX of the Complaint, Plaintiffs allege that a hostile work environment was created "because of their political affiliation and because of how they voted and campaigned in past elections." Compl, Count IX, ¶ 2. This claim is suspect, as it is unclear how defendants would know how plaintiffs voted. Moreover, it appears that plaintiffs

26

campaigned on the behalf of defendant Mayor Ricigliano, so it is unclear how their support for Mayor Ricigliano resulted in retaliation against plaintiffs.

Indeed, to state an actionable hostile work environment claim, plaintiffs must adhere to the standard set forth in the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1 et seq., which requires that plaintiffs be part of a protected class subject to unwelcome conduct so severe or pervasive to alter the conditions of employment, creating an intimidating, hostile or offensive work environment. Peacock v. Albertsons Acme Markets, 607 F. Supp. 2d 694, 698 (D.N.J. 2009). Plaintiffs have not alleged membership in a protected class under N.J.S.A. 10:5-4, nor can they. Indeed, political affiliation is not a protected class under NJLAD.

And, even if it was, plaintiffs have not identified any particular government action that created an intimating or hostile work environment. Plaintiffs were simply required to adhere to policies applicable to the entire union, and, in certain circumstances, to non-union personnel (e.g., statutory provision requiring healthcare deductions). Plaintiffs have alleged no adverse employment actions having been taken against them because of their "status." The factual basis for this claim is so devoid of merit that it should be dismissed.

Further, plaintiffs have alleged in Count X to have been subject to a hostile work environment in violation of the Civil Rights Act. In addition to pleading of being deprived of a right by threats, intimidation, coercion or force, plaintiffs must specifically identify the constitutional violation underlying their claim. Matthews, 717 F. Supp. 2d at 452. Plaintiffs have alleged no such constitutional violation here, requiring dismissal of this claim.

## CONCLUSION

For the foregoing reasons, defendants respectfully request that this Court dismiss plaintiffs' Complaint with prejudice.

**DECOTIIS, FITZPATRICK & COLE, LLP**
*Attorneys for Defendants, Township of Edison,*
*Antonia Ricigliano, and William Stephens*

By:        s/*Louis N. Rainone*
Louis N. Rainone

Dated: April 11, 2012