**DECOTIIS, FITZPATRICK & COLE, LLP**
Glenpointe Centre West
500 Frank W. Burr Blvd.
Teaneck, New Jersey 07666
Tel.: (201) 928-1100
*Attorneys for Defendants*
*Township of Edison, Antonia Ricigliano,*
*and William Stephens*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| INTERNATIONAL ASSOCIATION OF FIREFIGHTERS LOCAL 1197, ROBERT YACKEL, ANTHONY PEPE AND JAMES WALSH,<br><br>Plaintiffs,<br><br>v.<br><br>TOWNSHIP OF EDISON, ANTONIA RICIGLIANO IN HER OFFICIAL AND INDIVIDUAL CAPACITIES, DENNIS GONZALEZ IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, RICHARD LAIRD IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES AND WILLIAM STEPHENS IN HIS OFFICIAL AND INDIVIDUAL CAPACITIES, JOHN DOES 1-10, AND XYZ CORP. 1-10,<br><br>Defendants. | Hon. William J. Martini, U.S.D.J.<br><br>Civil Action No. 12-cv-00260-WJM-MF<br><br><br>**CERTIFICATION OF<br>MAUREEN RUANE** |

I, Maureen Ruane, of full age, do hereby certify as follows:

1. I am the Business Administrator for the Township of Edison (the "Township") and am fully familiar with the facts set forth herein.

2. The Township of Edison (the "Township") is a public employer as defined by the New Jersey Public Employer-Employee Relations Act, N.J.S.A. 34:13A-1, et seq. ("NJPEERA").

3. The International Associations of Fire Fighters Local No. 1197 ("Local 1197") is a public employee representative within the meaning of NJPEERA. Local 1197 is the majority representative for certain nonsupervisory firefighters in the Township's Division of Fire.

4. The Township and Local 1197 are parties to successive collective bargaining agreements. The current agreement (the "Agreement"), has a term of January 1, 2010 through December 31, 2013.

## COMPARATIVELY BETTER COLLECTIVE BARGAINING TERMS FOR PBA

5. In Paragraph 83 of the Complaint, Plaintiffs allege cryptically, "Upon information and belief, the Edison Police received comparatively favorable contract terms in its latest labor bargaining with Edison."

6. No further information is provided in the Complaint regarding what those more favorable terms might be.

7. The PBA Agreement was finalized in July of 2010, long before the conclusion of negotiations with Local 1197.

8. In fact, Local 1197 filed for compulsory interest arbitration on June 23, 2010. Copies of Local 1197's request for compulsory interest arbitration and confirming correspondence from PERC are annexed hereto as **EXHIBIT A**.

9. Ultimately the contract resulted from the arbitrator's mediation efforts. A true and accurate copy of correspondence from the arbitrator confirming resolution of the dispute, dated May 27, 2011, is annexed hereto as **EXHIBIT B**.

10. On June 22, 2011, through the arbitrator's mediation efforts, Local 1197 and the Township agreed to a new collective bargaining agreement, which was freely negotiated by and between the Township and Local 1197. A true and accurate copy of this Agreement is annexed hereto as **EXHIBIT C**.

11. In agreeing to the terms of the collective bargaining agreement, Local 1197 waived any claims as to the contents of the agreement.

## THE 1.5% HEALTHCARE CONTRIBUTION

12. In Paragraph 75 of Plaintiffs' Complaint in this matter, Plaintiffs cite the Townships deduction of 1.5% percent of their base salaries. While they do not expressly so state, it appears that Plaintiffs are challenging this action as somehow violative of their rights.

13. Plaintiffs have already challenged this action both before New Jersey's Public Employee Relations Commission ("PERC") and in the Superior Court of New Jersey – Appellate Division and withdrawn their challenge to this action, with prejudice, as more specifically described in the following paragraphs.

14. On March 22, 2010, the New Jersey Legislature enacted Public Law 2010, Chapter 2, amending N.J.S.A. 40A:10-21, to provide that public employees shall contribute, at minimum, 1.5% of their base salaries toward their health care benefits. This amendment was enacted in conduction with other legislative changes which were designed to improve the fiscal

strength of the State and local governments, to reduce taxpayer burdens, and to reform the systems to ensure they remain viable for current and future employees.

15.     On May 21, 2010, in accordance with the requirements of P.L. 2010, c. 2, and written guidance from the State of New Jersey Department of the Treasury, Division of Pension and Benefits, dated April 20, 2010, the Township began to deduct 1.5% of the base salary from the paychecks of all of its employees whose collective bargaining agreements had expired prior to that date as well as from the paychecks of all non-union employees. This deduction was not limited to the members of Local 1197.

16.     On June 14, 2010, Local 1197 filed a Request for Submission of a Panel of Arbitrators on its grievance over the issue of whether the terms of the expired collective negotiations agreement served to extend the parties' agreement beyond the contractual expiration date of December 31, 2009," barring the imposition of the 1.5% healthcare contribution requirement. The matter was docketed by New Jersey's Public Employee Relations Commission ("PERC") as Docket No. AR-2010-873. A true and accurate copy of the Request for Submission of a Panel of Arbitrators is annexed hereto as **EXHIBIT D**.

17.     On September 2, 2010, the Township filed a Petition for Scope of Negotiations Determination ("Scope Petition") with PERC, seeking a determination that because the Township was mandated by State law to impose the 1.5% healthcare contribution, this issue was non-negotiable. The Township's Scope Petition sought to restrain arbitration of Local 1197's grievance. PERC docketed this Scope Petition as Docket No. SN-2011-14. A true and accurate copy of the Scope Petition is annexed hereto as **EXHIBIT E**.

18.     On November 23, 2010, PERC declined to restrain the arbitration bearing Docket No. AR-2010-873. A true and accurate copy of PERC's decision, identified as P.E.R.C. No. 2011-49, is annexed hereto as **EXHIBIT F.**

19.     On December 10, 2010, the Township filed a timely appeal to the Superior Court of New Jersey – Appellate Division of PERC's decision. The Appellate Division marked the Township's appeal "filed" on December 13, 2010. A true and accurate copy of the Notice of Appeal and Appellate Division Case Information Statement are Annexed hereto as **EXHIBIT G.**

20.     The Township also filed a motion with PERC seeking a stay of PERC's decision. On February 3, 2011, PERC granted the Township's motion for a stay, noting in its decision that its prior decision, P.E.R.C. No. 2011-49, was erroneous. A true and accurate copy of this decision, designated P.E.R.C. No. 2011-60, is annexed hereto as **EXHIBIT H.**

21.     Despite PERC's holding, the Union demanded that the arbitration proceed, over the Township's objection. Only after the filing of briefs, did the Union withdraw.

22.     On April 11, 2011, PERC also filed a Statement in lieu of a Brief with the Appellate Division, stating that "its first ruling was wrong" and that "[PERC] thus urges the [Appellate Division] to reverse P.E.R.C. No. 2011-49 …, and to grant the Township's request to restrain binding arbitration of [Local 1197]'s grievance for the reasons set forth in P.E.R.C. No. 2011-60." A true and accurate copy of this Statement in lieu of Brief is annexed hereto as **EXHIBIT I.**

23.     On May 4, 2011, after briefs were filed with the Appellate Division, Local 1197 withdrew its grievance regarding the 1.5% healthcare contribution, then pending as PERC Docket No. AR-2010-873, thus mooting the Township's appeal of PERC's refusal to stay

5

arbitration. A true and accurate copy of the letter from Local 1197's counsel withdrawing the grievance is annexed hereto as **EXHIBIT J**.

24. On August 2, 2011, Local 1197, the Township, and PERC executed a stipulation of dismissal with prejudice of the matter before the Appellate Division. A true and accurate copy of the Stipulation of dismissal is annexed hereto as **EXHIBIT K**.

## REDUCTION IN MANNING

25. In Paragraphs 43 to 51 of the Complaint, Plaintiffs allege that the Township reduced the manning level of the Division of Fire from 22 firefighters on duty at any given time to 20 firefighters on duty in retaliation for their exercise of First amendment rights.

26. As set forth below, Plaintiffs have already challenged this action in New Jersey State Superior Court. The Township was granted summary judgment, and Plaintiffs claims were dismissed with prejudice.

27. On July 13, 2010, in an effort to cut costs, the Township reduced the manning level of the Division of Fire from 22 firefighters on duty at any given time to 20 firefighters on duty.

28. On October 29, 2010, Local 1197, Robert Yackel, James Walsh, and Raymond Tibok, filed a lawsuit by way of Complaint in Lieu of Prerogative Writs in the Superior Court of New Jersey (the "State Court Lawsuit") challenging, inter alia, this reduction in manning. The State Court Lawsuit was docketed as MID-L-8076-10. A true and accurate copy of the Complaint is annexed hereto as **EXHIBIT L**.

29. On November 5, 2010, the same parties filed a First Amended Complaint in Lieu of Prerogative Writs in the same action. A true and accurate copy of the First Amended Complaint is annexed hereto as **EXHIBIT M**.

30. The captions of the Complaint and First Amended Complaint of the State Court Lawsuit indicated that they were filed "on behalf of all similarly situated persons."

31. On May 27, 2011, the Township of Edison filed a motion for summary judgment in the State Court Lawsuit.

32. On June 23, 2011, after hearing oral argument the Honorable James P. Hurley, J.S.C., determined that the Township's reduction in manning was a valid exercise of management prerogative. The Court granted the Township's "motion for summary judgment as to all claims raised in Plaintiffs' First Amended Complaint in lieu of Prerogative Writs" and dismissed the Amended Complaint with prejudice. A true and accurate copy of the transcript of the hearing and the Court's reasons for its decision is annexed hereto As **EXHIBIT N**. A true and accurate copy of the Court's order is annexed hereto as **EXHIBIT O**.

33. Local 1197, Yackel, and Walsh were plaintiffs in the State Court Lawsuit as well as the present action pending before this Court.

34. This is the same conduct, which Plaintiffs in the present action before this Court, Local 1197, Robert Yackel, James Walsh, and Anthony Peppe, allege in Paragraphs 43 to 51 of the Complaint to be in retaliation for supposed exercise of First Amendment rights.

35. With the exception of Local 1197's grievance regarding the Barclays golf tournament, and the alleged failure to discipline an EMT, every act alleged in Plaintiff's Complaint occurred prior to the grant of summary judgment in the State Court Lawsuit.

1407383_1

36. Plaintiffs have alleged in the Complaint that all of the acts cited in their Complaint form a continuing pattern of retaliatory conduct by Defendants against the Plaintiffs.

37. Plaintiffs could have raised their First Amendment claims of retaliation as to each of these actions in the State Court Lawsuit. However, Plaintiffs chose not raise these claims.

38. The State Court Lawsuit named as defendants, the Township of Edison, Dennis Gonzalez, Richard Laird, and Antonia Ricigliano. The State Court Lawsuit did not name William Stephens as a defendant.

39. Plaintiffs' present lawsuit alleges that all of the Township's actions mentioned in the Complaint were the result of retaliation due to Plaintiffs' failure to support William Stephens' campaign for mayor in 2005.

40. Plaintiffs could have named William Stephens a defendant in the State Court Lawsuit. However, Plaintiffs failed to name him as a defendant, or even name him as a party subject to joinder.

## FIRE INSPECTORS

41. In Paragraphs 70 to 72 of the Complaint, Plaintiffs allege that on October 13, 2010, the Township's hiring of civilian fire inspectors in place of firefighters who had previously performed those tasks was "[i]n retaliation for Plaintiffs' opposition to Defendants' policies affecting the fire department and the Plaintiff Union."

42. This claim has already been litigated between the Township and Local 1197 through Local 1197's filing of an unfair labor practice charge with PERC.

8

1407383_1

43. Contrary to the allegation in the Complaint, the dispute between Plaintiffs and the Township regarding fire inspectors arose as early as August 19, 2010, when the Township posted a public advertisement for a civilian "fire prevention specialist."

44. On September 22, 2010, Local 1197 filed an unfair labor practice charge with PERC, alleging that the Township had unilaterally advertised for a civilian fire inspector to replace bargaining unit work without prior negotiation with the Union. A true and accurate copy of the unfair labor practice charge, which was docketed as CO-2011-120, is annexed hereto as **EXHIBIT P**.

45. Local 1197 did not argue in CO-2011-120 that the Township's decision to hire civilian fire inspectors was tainted by anti-union animus or otherwise constituted retaliatory conduct even though PERC had the authority to decide such a claim.

46. Simultaneously with its unfair labor practice charge, Local 1197 filed an application for interim relief.

47. On November 29, 2010, finding that Local 1197 did not have a substantial likelihood of success on the merits, PERC denied Local 1197's application for interim relief in a written decision, identified as I.R. No. 2011-25, a true and accurate copy of which is annexed hereto as **EXHIBIT Q**.

48. On September 29, 2011, PERC's Director of Unfair Practices issued a written decision and order, identified as D.U.P. 2012-6. A true and accurate copy of this decision and order is annexed hereto as **EXHIBIT R**.

49. In D.U.P. 2012-6, the Director held that the Township had validly exercised its management prerogative in transferring fire inspection duties from firefighters to civilian

1407383_1

inspectors, and transferring the firefighter/inspectors to active firefighting duties. The Director therefore refused to issue a complaint, and dismissed Local 1197's unfair labor practice charge.

50. Local 1197 has appealed this decision to the full PERC Commission pursuant to N.J.A.C. 19:4-2.3. The appeal is still pending.

## **EXECUTIVE ORDERS**

51. In Paragraphs 66 to 69 of the Complaint, Plaintiffs challenge an executive order issued by Mayor Ricigliano, which did nothing more than restate New Jersey law.

52. In Paragraph 66, Plaintiffs allege that:

> [i]n direct retaliation for Plaintiffs' opposition to Defendants' policies affecting the fire department, Plaintiffs' political support of the Union instead of Stephens in the 2005 election, and Plaintiffs' continued allegiance to the Union, Defendant Ricigliano on December 14, 2010 issued a directive, which barred all Edison Township employees from discussing Township business with Township Council members."

53. The Township of Edison is governed by the mayor-council plan of government. As such, N.J.S.A. 40:69A-37.1 restricts contact between members of the municipal council and the Township's employees.

54. N.J.S.A. 40:69A-37.1 provides, in pertinent part:

> In any municipality adopting the mayor-council plan of government, the municipal council shall deal with employees of the department of administration and other administrative departments solely through the mayor or his designee. All contact with the employees, and all actions and communications concerning the administration of the government and the provision of municipal services shall be through the mayor or his designee, except as otherwise provided by law.

55. On December 14, 2010, Mayor Ricigliano issued an executive order. A true and accurate copy of that executive order is annexed hereto as **EXHIBIT S**.

10

1407383_1

56. This executive order did nothing more than implement the statute, by instructing all Township employees, with the exception of the Township Clerk and Deputy Clerk not to discuss Township business with members of the Township Council.

57. On April 27, 2011, Mayor Ricigliano issued an amended executive order, permitting the Municipal Clerk, the Deputy Clerk and all Directors (department heads) to discuss Township business directly with members of the Council. A true and accurate copy of this amended executive order is annexed hereto as **EXHIBIT T**.

58. It is plain that the executive order and amended executive order applied to all employees – not just firefighters.

59. Plaintiffs failed to acknowledge the amended executive order in the Complaint.

## CIVILIAN EMTs and HOME VISITATION

60. In Paragraphs 52 to 62 of the Complaint, Plaintiffs allege that, in retaliation for Plaintiffs' political support of Local 1197, opposition to Stephens' campaign in 2005, and their opposition to the Township's policies, the Township hired additional emergency medical technicians ("EMT") to provide emergency medical services that had been provided by firefighter certified as EMTs.

61. In Paragraphs 77 to 81 of the Complaint, Plaintiffs allege that, in retaliation for Plaintiffs' political support of Local 1997, opposition to Stephens' campaign in 2005, and their opposition to the Township's policies, the Township instituted a policy of conducting home visits to firefighters on sick leave.

62. As set forth more fully below, Plaintiffs have raised these claims of retaliation before New Jersey's Public Employment Relations Commission ("PERC") in the form of an

11

unfair labor practice charge and a grievance. In response, the Township filed a Petition for Scope of Negotiations Determination ("Scope Petition") seeking a determination that the hiring of civilian EMTs and the reassignment of firefighters to firefighting duties is non-negotiable. PERC has dismissed Local 1197's unfair labor practice charge, and has, finding a likelihood of the Township's success on the merits with regard to its Scope Petition, granted the Township a preliminary injunction restraining arbitration of Local 1197's grievance.

63. On January 15, 2011, faced with a severe manpower shortage and after determining that trained firefighters were better used fighting fires, the Township eliminated the Firefighter/EMT rotation, and began assigning all emergency medical response work to the Township's civilian EMTs – both professional and volunteer.

64. As firefighters were no longer assigned to provide emergency medical services, the Township notified the firefighters formerly assigned to the Firefighter/EMT rotation that they would be reassigned to non-EMT assignments. This change was effective January 25, 2011.

65. As firefighters were no longer assigned to the Firefighter/EMT rotation, a salary differential, which had previously been paid to firefighters serving on that rotation, was eliminated.

66. On February 3, 2011, Local 1197 filed an unfair labor practice charge against the Township, challenging the Township's decision to eliminate the Firefighter/EMT rotation, and assign all emergency services response work to the Township's civilian EMTs. The unfair labor practice charge also challenged the Township's institution of a sick leave verification policy involving home visitation of firefighters. The matter was docketed as CO-2011-301. A true and accurate copy of the Unfair Labor Practice Charge is annexed hereto as **EXHIBIT U**.

1407383_1

67. On November 14, 2011, Local 1197 filed a brief with PERC in support of its Unfair labor Practice Charge in matter no. C0-2011-301, Local 1197 alleged that the Township's actions constituted illegal retaliation for allegedly protected conduct and speech. A true and accurate copy of that brief is annexed hereto as **EXHIBIT V**.

68. At page 10-11 of that brief, Local 1197 alleged that the Township's actions were motivated by "the activity of the Local [1197] and its membership in engaging in concerted activity in both the collective negotiations and political arena." Local 1197 wrote:

> [T]he Township Administration is well aware of the Local's posture, including filing unfair labor practice claims in State and Federal court and grievance/arbitrations challenging Township conduct … In this regard, during the period leading up to the foregoing changes instituted by the Township, Local 1197's President, Robert Yackel was quoted extensively in the press as opposing the Administration's cuts in the Fire Department's manning levels.

69. The brief continues by alleging that "Interim Business Administrator and Assistant to the Mayor William Stephens has made statements highly critical of the Local 1197 and its leadership since the Local opposed his candidacy for mayor in 2005," and that "Interim Business Administrator and Assistant to the Mayor William Stephens made comments to his campaign staff that, once elected, he would retaliate against Local 1197 for its political opposition to his campaign."

70. These are the same claims that Plaintiffs seek to raise in this federal lawsuit.

71. On December 31, 2011, PERC's Director of Unfair Practices ("Director") issued decision <u>D.U.P. 2012-9</u>, a true and accurate copy of which is annexed hereto as **EXHIBIT W**.

72. In this decision, the Director addressed Local 1197's claims of retaliation and anti-union animus, finding them to be without merit. The Director held further that the transfer of duties and home visitation were within management's prerogative and not subject to

negotiation. The Director therefore refused to issue a complaint in response to Local 1197's unfair labor practice charge, and dismissed the charge.

73. Local 1197 filed an appeal of the dismissal to the full PERC Commission pursuant to N.J.A.C. 19:14-2.3 in January of 2012. The parties have filed briefs, and the appeal is pending.

74. In conjunction with this unfair labor practice charge, on March 17, 2011, Local 1197 filed a request for submission of a panel of arbitrators to hear a grievance relating to the elimination of the salary differential which had previously been paid to firefighters working as EMTs. The matter was docketed as AR-2011-771. A true and accurate copy of the Request for Submission of a Panel of Arbitrators is annexed hereto as **EXHIBIT X**.

75. In response, on February 1, 2012, the Township petitioned for a scope of negotiations determination, and filed an application for interim relief seeking to restrain arbitration of AR-2011-771 pending PERC's determination of the Township's Scope Petition. A true and accurate copy of the Township's Scope Petition, docketed as SN-2012-041, is annexed hereto as **EXHIBIT Y**.

76. The Scope Petition sought a determination from PERC that the Township's decision to eliminate the Firefighter/EMT rotation, and to return sole responsibility for emergency medical services to the Township's civilian full-time, per-diem, and volunteer EMTs is within the Township's exclusive management prerogative and is not subject to negotiation. The Scope Petition also sought a determination that with the elimination of the Firefighter/EMT rotation, the elimination of the Firefighter/EMT differential is similarly not subject to negotiation.

1407383_1

77. On February 16, 2012, after oral argument, PERC's designee, finding that the Township had a likelihood of success on the merits, temporarily restrained arbitration of AR-2011-771 pending PERC's determination of the Township's Scope Petition. A written interlocutory decision was issued on March 9, 2012. A true and accurate copy of that decision, identified as I.R. No. 2012-14, is annexed hereto as **EXHIBIT Z**.

78. Local 1197's grievance AR-2011-771 and the Township's Scope Petition SN-2012-041 are both pending before PERC at this time.

## EMS DISCIPLINE COMPARED TO DISCIPLINE OF DUANE CLAUSE

79. In Paragraph 82 of the Complaint, Plaintiffs allege that an EMS employee was not disciplined after involvement in a motor vehicle accident, while Firefighter Duane Clause ("Firefighter Clause") was disciplined for a similar offense.

80. Plaintiffs' allegation is incorrect and contains several misrepresentations. First, Plaintiffs misreport the date of the incident, which actually occurred on July 13, 2011 – not July 14th. Second, the incident involved the rear of the ambulance becoming stuck on a sunken portion of a service road. The tow truck merely assisted with advancing the ambulance out of the area. It did not actually tow the vehicle. Contrary to the allegation in the Complaint, the ambulance never left the road. Furthermore, there was no damage to the vehicle, and the Township never received a bill for tow truck service.

81. Nonetheless, contrary to the allegation in Paragraph 82, the EMT at issue was disciplined for the accident, receiving both a verbal reprimand on July 13, 2011, and driver remediation on August 2, 2011. A true and accurate copy of the August 2, 2011, letter sent by

1407383_1

the Township's Chief of EMS to the EMT (whose name has been redacted for privacy) is annexed hereto as **EXHIBIT AA**. A copy of this letter was placed in the EMT's personnel file.

82. This was, in fact, greater discipline than was levied on Firefighter Clause. A true and accurate copy of the grievance filed by Firefighter Clause is annexed hereto as **EXHIBIT BB**.

83. The grievance filed by Firefighter Clause states that he received a verbal reprimand, and a letter documenting the verbal reprimand, just as the EMT above received.

84. Unlike the discipline meted out to the EMT, Firefighter Clause's grievance does not indicate that any driver remediation was required of him.

85. The allegation in the Complaint that the EMT received preferential treatment with regard to discipline is disproven by this evidence that the two employees received almost identical discipline, with the EMT receiving a more severe sanction.

## BARCLAYS GRIEVANCE

86. In paragraph 83 of the Complaint, Plaintiffs allege that the Township negotiated a better rate of pay for off-duty police officers than for off-duty firefighters to provide services for the Barclays golf tournament held August 23, 2011 to August 28, 2011.

87. A true and accurate copy of the Memorandum of Agreement for Discretionary Emergency Services between the Township and The Barclays/PGA Tour ("Barclays Agreement") is annexed hereto as **EXHIBIT CC**.

88. The Barclays Agreement provided that the Township would provide police, fire, and emergency services for the Barclays golf tournament held at the Plainfield Country Club in Edison, New Jersey between the dates of August 23, 2011, and August 28, 2011.

16

1407383_1

89. In negotiating the Barclays Agreement, the Township simply applied the long-standing negotiated rates for Fire Fighters and Police.

90. On December 12, 2011, Local 1197 filed a grievance and request for submission of a panel of arbitrators with PERC regarding this matter. The matter has been docketed as AR-2012-331. A true and accurate copy of the request for submission of a panel of arbitrators is annexed hereto as **EXHIBIT DD**.

91. On January 13, 2012, PERC assigned Joseph Licata as arbitrator for the matter. A true and accurate copy of the letter from PERC appointing the arbitrator in this matter is annexed hereto as **EXHIBIT EE**.

92. The arbitration of this grievance is pending before PERC, and a hearing is currently scheduled for September 7, 2012.

## METLIFE PLAN

93. In Paragraphs 73 to 74 of the Complaint, Plaintiffs allege that the Township "refus[ed] to return deferred compensation to Plaintiff Union Members following the failure of a deferred compensation plan with MetLife" in May of 2010.

94. In December of 2009, prior to Mayor Ricigliano taking office, the Township, at the request of certain members of the Division of Fire, sought to establish an additional deferred compensation plan (the "Plan") to be administered by Metropolitan Life Insurance Company ("MetLife").

95. On December 14, 2009 and December 15, 2009, again, prior to this administration, the Township's former business administrator, Anthony Cancro and MetLife Sr.

1407383_1

Vice president Thomas G. Hogan, Jr., executed an agreement between the Township and MetLife for administration of the Plan.

96.     The Plan was open to all employees of the Township, not just the members of Local 1197.

97.     Employees, including employees who were not members of Local 1197, chose to enroll in the Plan, and elected to have their contributions withheld from their paychecks.

98.     Municipal deferred compensation plans must be approved by New Jersey's Department of Community Affairs ("DCA") before funds may be invested.

99.     On April 28, 2010, the Township adopted resolution No. 218-42010, authorizing implementation of the Plan, and transmitted same to DCA for approval. A true and accurate copy of this resolution is annexed hereto as **EXHIBIT FF**.

100.    On or about May 18, 2010, the Township received a memorandum, dated May 10, 2010, from DCA, denying approval for the Plan, and directing the adoption of an amendatory resolution. The memorandum also directed that no monies could be invested until the plan had been approved. A true and accurate copy of this memorandum is annexed hereto as **EXHIBIT GG**.

101.    Contrary to the allegation in Paragraph 74 of the Complaint, the May 10, 2010 memorandum was silent regarding payroll deductions.

102.    Until DCA approved the Plan, the Township could not transfer the funds to MetLife for investment. Instead the funds were held in a trust account pending approval of the Plan.

1407383_1

103. The Township's employees, including Plaintiffs, were advised that their money would be returned to them if they wished, and that payroll deductions would be stopped if requested.

104. To my knowledge, no employee requested the return of his or her money, and no employee requested the cessation of payroll deduction.

105. Between September 10, 2010 and September 17, 2010, the Township advertised a request for proposals for a Deferred Compensation Plan and Service Agreement.

106. On September 22, 2010, the Township adopted an amendatory resolution No. 578-092010, authorizing implementation of the Plan, and transmitted same to DCA for approval.

107. On October 8, 2010, DCA approved the Plan. A true and accurate copy of the memorandum advising the Township of the approval is annexed hereto as **EXHIBIT HH**.

108. On the same date, October 8, 2010, the Township transferred all of the employees' funds, which had been held in trust, to MetLife for investment in accordance with the terms of the Plan.

109. The Plan has operated ever since, and the Township's employees' payroll deductions have continued.

## FEDERAL LITIGATION

110. On May 12, 2011, Plaintiffs filed a complaint in the United States District Court for the District of New Jersey containing almost identical allegations to the allegations in the present lawsuit. The complaint was docketed as Case No. 2:11-cv-02734. A true and accurate copy of this complaint is annexed hereto as **EXHIBIT II.**

1407383_1

111. The complaint was filed prior to the Township's filing of a summary judgment motion in the State Court Lawsuit.

112. On September 16, 2011, Plaintiffs voluntarily dismissed their complaint in Case No. 2:11-cv-02734. A true and accurate copy of Plaintiffs' counsel's letter and "Voluntary Dismissal Without Prejudice" withdrawing the complaint is annexed hereto as **EXHIBIT JJ**.

113. On January 12, 2012, Plaintiffs filed the Complaint in the present matter. A true and accurate copy of the Complaint is annexed hereto as **EXHIBIT KK**.

114. I make this certification in support of the Township's motion to dismiss the Complaint.

I certify that the above statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

*Maureen Ruane*
Maureen Ruane
Business Administrator

Dated: April 11, 2012