UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **INTERNATIONAL ASSOCIATION OF FIREFIGHTERS, LOCAL 1197,** *et al.*, | Civ. No. 2:12-cv-00260 (WJM) |
| Plaintiffs, | OPINION |
| v. | |
| **TOWNSHIP OF EDISON,** *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiffs International Association of Firefighters, Local 1197 (the "Union"), Robert Yackel, Anthony Pepe, and James Walsh filed this action against the Township of Edison (the "Township"), Antonia Ricigliano, Dennis Gonzalez, William Stephens, and Richard Laird. This matter comes before the Court on the Township, Ricigliano, and Stephens's motion to dismiss and request for sanctions under Federal Rule of Civil Procedure 11. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the motion to dismiss is **GRANTED**, and the request for Rule 11 sanctions is **DENIED**.

I.  BACKGROUND

The Union is a labor organization that acts as the collective bargaining representative for Township of Edison firefighters. Plaintiff Yackel is the President of the Union. Plaintiffs Pepe and Walsh are firefighters. The Township is a municipal corporation organized under the mayor-council form of government pursuant to New Jersey's Municipal Charter Act (the "Faulkner Act"), N.J. Stat. Ann. § 40:69A-1 (1985). Defendant Ricigliano is the Mayor of the Township of Edison, who commenced her four-year term in January 2010. Defendant Gonzalez is the former Business Administrator for the Township. Defendant Stephens is employed by the Township as a special assistant to Mayor Ricigliano. Defendant Laird is the former Assistant Business Administrator of the Township.

The Complaint alleges that Defendants retaliated against Plaintiffs because Plaintiffs publicly criticized Defendants' management of the Fire Department and campaigned against Defendant Stephens when Stephens ran for Mayor. Plaintiffs set

1

forth seven allegedly retaliatory actions taken by Defendants.  In response, Defendants argue that all of these issues were already litigated, or are currently being litigated, in other forums.  The Court will summarize each of the seven alleged issues, along with any associated prior or pending proceedings:[1]

1. **Reduction of Staffing:**  Plaintiffs allege that, on an unspecified date, Defendants cut the number of firefighters on staff at each fire company from 22 to 20.  Compl. ¶ 43.  In response, the Union, Yackel, Walsh, and another firefighter filed suit against the Township, Mayor Ricigliano, Gonzalez, and Laird in the Superior Court of New Jersey, Middlesex County.  *See Int'l Assoc. of Firefighters Local 1197, et al. v. Township of Edison, et al.*, No. MID-L-8076-10 (N.J. Super. Ct. Law Div. filed Oct. 29, 2010).  In an Order dated June 23, 2011, the Honorable James P. Hurley granted the Township's motion for summary judgment, finding that Mayor Ricigliano's decision to reduce staffing was a valid exercise of her executive authority.  Cert. of Maureen Ruane ("Ruane Cert.") Ex. N at 58-60, ECF No. 6-2.  The court also concluded that there were "no novel constitutional issues" raised by the plaintiffs that warranted further review.  Ruane Cert. Ex. N at 61.

2. **1.5% Healthcare Contribution:**  Plaintiffs allege that, on May 1, 2010, the Township began to deduct 1.5% of the firefighters' base salary as an employee contribution toward health insurance.  Compl. ¶ 75.  On June 14, 2010, the Union filed a grievance with the Public Employment Relations Commission ("PERC") to preclude the Township from making these deductions.  Ruane Cert. Ex. D.  The parties litigated the issue before PERC, and the Township filed an appeal with the New Jersey Superior Court, Appellate Division.  Ruane Cert. Exs. F-I.  On August 2, 2011, while the appeal was pending, the Township and the Union filed a stipulation dismissing the case with prejudice.  Ruane Cert. Ex. K.

3. **Civilian Firefighters:**  Plaintiffs allege that, in August 2010, Defendants decided to replace Union firefighters with civilian "Fire Prevention Specialists."  Compl. ¶ 70.  On September 22, 2010, the Union filed an unfair labor practice charge with PERC.  *See* Ruane Cert. Ex. R at 1.  On September 29, 2011, PERC's Director of Unfair Practices dismissed the charge, holding that the Township had validly exercised its management prerogative to transfer fire inspection duties to civilian inspectors.  *Id.* at 8.  The Union appealed this decision to the PERC Commission and the appeal remains pending.  Ruane Cert. ¶ 50.

---

[1] The Court may consider matters of public record on a motion to dismiss.  *See McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009).  Additionally, "[a court] may take judicial notice of another court's opinion—not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity."  *Southern Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

2

4. **Executive Orders:**  On December 14, 2010, Mayor Ricigliano issued an executive order pursuant to the Faulkner Act, barring all Edison Township employees from discussing Township business directly with members of the Township Council (the "Council").  *See* Compl. ¶ 66; N.J. Stat. Ann. § 40:69A-37.1.  Plaintiffs allege that the executive order prevented Plaintiffs from discussing Fire Department matters with the Council.  Compl. ¶ 68.  On April 27, 2011, Mayor Ricigliano amended her order to advise the Municipal Clerk, Deputy Clerk, and all Directors (department heads) that they were permitted to discuss Township business directly with members of the Council.  Ruane Cert. Ex. T.  The Union has not initiated any proceedings with respect to these executive orders.

5. **Civilian Emergency Medical Technicians ("EMTs") and Verification of Sick Time:**  Plaintiffs allege that, on January 10, 2011, the Township hired full-time, non-union EMTs to perform rescue services that had previously been performed by firefighters, which reduced pay for 36 firefighters.  Compl. ¶¶ 52-54.  Plaintiffs also allege that, starting on January 29, 2011, Defendants instituted a policy of verifying sick leave for firefighters.  Compl. ¶¶ 77-79.  On February 3, 2011, the Union filed an unfair labor practice charge with PERC, alleging that the Township's EMT and sick leave policies constituted retaliation for the Union's public criticism of the Township and opposition to Stephens's campaign.  Ruane Cert. Exs. U and W.  On December 30, 2011, PERC's Director of Unfair Practices dismissed the charge, finding the Union's claims of retaliation and anti-union animus to be meritless.  Ruane Cert. Ex. W.  The Union appealed this decision to the PERC Commission and the appeal remains pending.  Ruane Cert. ¶ 73.  On March 17, 2011, the Union filed a request to arbitrate the issue of civilian EMTs.  On February 1, 2012, the Township filed an application seeking to restrain the arbitration.  *See* Ruane Cert. Ex. Z.  The Union's request for arbitration and the Township's application remain pending.

6. **Alleged Disciplinary Discrepancy:**  On March 19, 2011, a firefighter hit a parked car while operating a Township vehicle, and received a verbal reprimand.  Compl. ¶ 82; Ruane Cert. Ex. BB.  On April 8, 2011, the firefighter filed a grievance regarding this discipline decision.  *Id.*  Plaintiffs allege that another Township employee who was involved in a motor vehicle accident was not disciplined.  Compl. ¶ 82.

7. **The Barclays:**  The Barclays Golf Tournament was held at Edison's Plainfield Country Club between August 23, 2011 and August 28, 2011.  Compl. ¶ 83.  Plaintiffs allege that the Township compensated off-duty police officers at a higher rate than off-duty firefighters to work at the golf tournament.  *Id.*  On December 12, 2011, the Union filed a grievance and request for submission of a panel of arbitrators with PERC to challenge the difference in off-duty pay.  Ruane Cert. Ex. DD.  The matter was referred to an arbitrator for a hearing on September 7, 2012.  *Id.* ¶ 92.

On May 12, 2011, Plaintiffs filed a complaint in this Court, containing allegations that that are nearly identical to the allegations in this case. *See Int'l Assoc. of Firefighters, Local 1197, et al. v. Township of Edison, et al.*, No. 2:11-cv-02734, ECF No. 1. On September 16, 2011, before any motions were filed, Plaintiffs voluntarily dismissed the 2011 complaint. *Id.* (ECF No. 4). On January 13, 2012, Plaintiff filed the Complaint in this case.

## II.   DISCUSSION

Plaintiffs initially filed a 10-Count Complaint. After Defendants filed their motion to dismiss, Plaintiffs stipulated to the dismissal of seven Counts of the Complaint. Thus, only three Counts remain:

(1) Count 1:  Violations of 42 U.S.C. § 1983 ("Section 1983");
(2) Count 3:  Violations of 42 U.S.C. § 1988 ("Section 1988"); and
(3) Count 4:  Violations of New Jersey's Conscientious Employee Protection Act, N.J.S.A. 34:19-1 ("CEPA").

Defendants have moved to dismiss the Complaint in its entirety, arguing that all of the issues in dispute have already been litigated. Defendants have also requested that Plaintiffs be sanctioned under Rule 11 for filing frivolous litigation. The Court will first address Defendants' motion to dismiss, followed by Defendants' request for Rule 11 sanctions.

### A.  Motion to Dismiss

The facts alleged in this Complaint have been the subject of 13 different proceedings in five different forums.[2] The legal issues raised in this Complaint have been litigated *ad nauseum*. Time and again, adjudicators have found that the facts present no novel constitutional issues, that the claims of retaliation and anti-union animus lack merit, and that the Township properly exercised its authority in making decisions affecting the Fire Department. Yet Plaintiffs now seek a fourteenth bite at the apple. Because Plaintiffs have already had innumerable opportunities to litigate the issues presented, the Court finds that the Complaint should be dismissed.

#### i.  Legal Standards

Defendants argue that Plaintiffs are barred from raising their claims by various doctrines, including *res judicata*, the entire controversy doctrine, and *Younger* abstention. The Court will address each doctrine in turn. The Court notes that, when determining the preclusive effect of state court rulings, federal courts look to the state's law of preclusion. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given . . . under the law of the State in which the judgment was rendered").

---

[2] The five forums are: (1) New Jersey Superior Court, (2) the New Jersey Appellate Division, (3) PERC, (4) the PERC Commission, and (5) the U.S. District Court for the District of New Jersey.

***Res Judicata***.  "The term '*res judicata*' refers broadly to the common-law doctrine barring relitigation of claims or issues that have already been adjudicated." *Velasquez v. Franz*, 123 N.J. 498, 505 (1991).  The rationale underlying *res judicata* recognizes that fairness to the defendant and sound judicial administration require a definite end to litigation.  Restatement (Second) of Judgments § 19 cmt. a (1982).  In New Jersey, a claim is barred by *res judicata* when three elements are met:

> (1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one.

*Watkins v. Resorts International Hotel and Casino, Inc.*, 124 N.J. 398, 412 (1991).

**The Entire Controversy Doctrine**.  In addition to barring claims that were actually litigated in a prior action, New Jersey's entire controversy doctrine bars plaintiffs from litigating claims that ***could have been*** litigated in a prior action.  *Bernardsville Quarry v. Borough of Bernardsville*, 929 F.2d 927, 930 (3d Cir. 1991) (citing *Woodward-Clyde Consultants v. Chemical & Pollution Sciences, Inc.*, 105 N.J. 464, 472-73 (1987)); N.J. Ct. R. 4:30A ("Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims").  The scope of the entire controversy doctrine is sweeping:  the doctrine requires "the joinder of virtually all causes, claims, and defenses relating to a controversy between the parties engaged in litigation." *Cogdell by Cogdell v. Hosp. Ctr. at Orange*, 116 N.J. 7, 16 (1989).  A "party cannot withhold part of a controversy for separate later litigation even when the withheld component is a separate and independently cognizable cause of action." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 137 (3d Cir. 1999).

Furthermore, litigants are required to join related claims with the first action, even if the related claims arise while the first action is pending. *McNally v. Providence Washington Ins. Co.*, 304 N.J. Super. 83, 92 (App. Div. 1997); *Mystic Isle Dev. Corp.*, 142 N.J. at 323 (the entire controversy doctrine "applies to constituent claims that arise during the pendency of the first action that were known to the litigant").  There may be cases where it is impractical or unwise to join a new claim to a pending litigation.  However, "the court, rather than a litigant acting unilaterally, must make the determination of whether the supplementary claim is to be joined or reserved." *Brown v. Brown*, 208 N.J. Super. 372, 381 (App. Div. 1986).  Thus, when a new claim arises during litigation, "the claimant must seek leave pursuant to R. 4:9-4 to file a supplemental pleading . . . and if the claimant fails to so move, he will ordinarily be barred from raising the claim in a subsequent suit." *Id.* at 381-82.

***Younger* Abstention**.  Pursuant to the doctrine developed under *Younger v. Harris*, 401 U.S. 37 (1971), district courts have "discretion to abstain from exercising jurisdiction over a particular claim where resolution of that claim in federal court would

offend principles of comity by interfering with an ongoing state proceeding." *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005). Three requirements must be met before *Younger* abstention is appropriate:

> (1) there must be pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues.

*Middlesex County Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982). The Supreme Court held that this doctrine extends to state administrative proceedings, so long as the claimant has an opportunity to raise any constitutional claims before the administrative agency or during state-court judicial review of the agency's determination. *Id.*; *Ohio Civil Rights Comm'n v. Dayton Christian Sch., Inc.*, 477 U.S. 619, 629 (1986).

### ii. Analysis

In this case, Plaintiffs are barred from litigating every one of the seven issues raised in their Complaint.

The first issue raised by Plaintiffs, the reduction of Fire Department staffing, is barred by *res judicata*. All three elements of New Jersey's three-part *res judicata* test have been met here. First, this issue was the subject of a prior state court action in which the court reached a valid, final judgment on the merits. In the prior action, the Superior Court of New Jersey granted summary judgment for the Township, making detailed findings to support its conclusion that the Mayor Ricigliano's staffing decision was a valid exercise of her executive authority. Second, the parties in this action are identical to or in privity with those in the prior state court action. Plaintiffs the Union, Yackel, and Walsh and Defendants the Township, Mayor Ricigliano, Gonzalez, and Laird were all parties to the prior state court action. Defendant Stephens is in privity with the Township and Mayor Ricigliano, and Plaintiff Pepe, as a member of the Union, is in privity with Yackel and Walsh. *See E.E.O.C. v. U.S. Steel Corp.*, 921 F.2d 489, 494 (3d Cir. 1990) ("[J]udgments in actions involving a labor union . . . are binding on members whose interests were adequately represented"). Third, the claim in this action grows out of the exact same transaction or occurrence as the claim in the state court action; namely, the reduction of Fire Department staffing from 22 to 20 firefighters. Thus, Plaintiffs are barred from relitigating the first issue.

The second, third, fourth, fifth, and sixth issues raised by Plaintiffs are barred by the entire controversy doctrine. The state court decision was entered on June 23, 2011. Each of these five issues arose before the state court decision was entered:

- 1.5% Healthcare Contribution (May 2010)
- Civilian Firefighters (August 2010)
- Executive Orders (December 2010)
- Civilian EMTs and Verification of Sick Time (January 2011)

6

- Alleged Disciplinary Discrepancy (March 2011)

Plaintiffs did not raise any of these issues in the state court proceeding, thereby depriving the court of the opportunity to determine whether these claims should be joined. Thus, Plaintiffs are barred from raising these claims in a subsequent suit. *Brown*, 208 N.J. Super. at 381. Plaintiffs argue that the claims raised in this litigation are distinct from the claims that were raised in state court. However, the entire controversy doctrine bars subsequent litigation of "all causes, claims, and defenses" that could be related to the first litigation, even if they are distinct claims. *Cogdell*, 116 N.J. at 16. Further, it appears that the state court did, in fact, consider and reject Plaintiffs' constitutional claims during the state court proceeding. *See* Ruane Cert. Ex. N at 61 (holding that there were "no novel constitutional issues" that warranted further review).[3]

Finally, the Court must abstain from resolving the seventh issue, the Barclays dispute, because resolving that issue would interfere with ongoing state proceedings. All three of the *Younger* abstention requirements have been met here. First, the pending PERC proceedings[4] are judicial in nature. *See Local 194, Int'l Fed'n of Prof'l & Technical Engineers, AFL-CIO v. The New Jersey Tpk. Auth.*, No. 11-1653, 2011 WL 1547473, at *3 (D.N.J. Apr. 21, 2011) ("*Local 194*") ("[A]ctions brought before PERC are adjudicatory in nature"). Second, PERC proceedings implicate important state interests. *Id.* at *5; *Local 54 Patrolman's Benevolent Ass'n v. Fontoura*, No. 06–6278, 2007 WL 4165158, at *4 (D.N.J. Nov.19, 2007) (recognizing the State's interest in using PERC to adjudicate labor disputes). Third, the PERC proceedings, and state-court judicial review of the PERC proceedings, afford Plaintiffs an adequate opportunity to raise any constitutional issues. *Hunterdon Cent. High Sch. Bd. of Ed. v. Hunterdon Cent. High Sch. Teachers' Ass'n*, 174 N.J. Super. 468, 472 (App. Div. 1980), *aff'd*, 86 N.J. 43 (1981) (PERC acted within its power in adjudicating a constitutional issue); *Local 194*, 2011 WL 1547473, at *8 (New Jersey Appellate Division can always address constitutional issues when reviewing a PERC determination). Because resolution of this issue would interfere with ongoing state proceedings, the Court will abstain from exercising jurisdiction over this claim.

Because Plaintiffs are barred from litigating every one of the seven issues raised in their Complaint, the entire Complaint is **DISMISSED WITH PREJUDICE**.

---

[3] Even if the entire controversy doctrine did not apply to these issues, Plaintiffs would still be barred from litigating almost all of them. With respect to the second issue, the 1.5% Healthcare Contribution, the Union previously filed suit and then stipulated to the dismissal of that case *with prejudice*. The third issue, Civilian Firefighters, and the fifth issue, Civilian EMTs and Verification of Sick Time, are the subject of pending PERC proceedings alleging retaliation. And the sixth issue, the alleged disciplinary discrepancy, was already the subject of a grievance procedure.

[4] In their Rule 11.2 Certification, Plaintiffs acknowledge that the Barclay's dispute is the subject of a pending PERC proceeding. *See* Cert. with Local Rule 11.2, ECF No. 1.

### B. Request for Rule 11 Sanctions

In half a page of their motion to dismiss briefing, Defendants argue that the Court should sanction Plaintiffs under Rule 11 for filing a frivolous lawsuit and for forcing Defendants to address seven Counts of the Complaint, which Plaintiffs later withdrew. *See* Defs.' Br. 2; Defs.' Reply Br. 2. Rule 11 requires that a motion for sanctions (1) "be made separately from any other motion," (2) "describe the specific conduct that allegedly violates Rule 11(b)," and (3) "be served under Rule 5." Fed. R. Civ. P. 11(c)(2). Rule 11 contains a safe harbor provision, which provides that a motion for sanctions "must not be . . . presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service." *Id.*

Plaintiffs filed their Complaint in this case knowing that the facts alleged had been the subject of 13 prior proceedings. Plaintiffs filed their Complaint even though the issues raised in it were litigated to finality in state court, or were currently being litigated, or were dismissed — with prejudice — by Plaintiffs themselves. Making such a filing abuses the judicial process, wastes judicial resources, and arguably merits the imposition of sanctions. However, Defendants' request for sanctions did not comply with any of the procedural requirements set forth in Rule 11(c)(2). For example, Defendants did not file a motion for sanctions separately from their motion to dismiss, and did not provide Plaintiffs with 21 days to withdraw the challenged claims. Accordingly, Defendants' request for sanctions must be **DENIED**.

### III. CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE**. Defendants' request for Rule 11 sanctions is **DENIED**. An appropriate order follows.

    /s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: January 31, 2013**